WILLIAM PINKNEY WHYTE and BENJAMIN F. HOR-
WITZ, Trustees *vs.* CHARLES DIMMOCK.

*Allowance of Commissions in Equity—The word, Disburse-
ments—Cost of Record.*

Under a decree of Court which allowed a rate of commission of five
*per cent.* on the amount of "all collections which the trustee may
make as trustee of the estate, and also, a further commission of five
*per cent.* on the amount of all disbursements and investments which
he has made, or may hereafter make;" which provision was referred
to by a subsequent order appointing the appellants, trustees, as
fixing the rate of commission to be allowed them, payments over
to the appellee, a *cestui que trust,* of moneys collected, and upon
which commissions had been allowed for such collection, were not
disbursements within the meaning of the decree, in regard to the
commission to be allowed. The word "disbursements" was
used as meaning expenditures during the existence of the trust,
as contradistinguished from payments over to the *cestui que
trust.*

Where an appellee had audits and accounts incorporated into the
record by his direction, which were not properly before this Court,
it was HELD :

That the cost of that part of the record would be taxed to him.

APPEAL from the Superior Court of Baltimore City, in
Equity.

By an order of the Court below, dated the 25th Feb-
ruary, 1870, the appellants were appointed trustees of the
estate of Mrs. Emily L. Dimmock, deceased, acquired un-
der the will of her mother, Mrs. Juliet A. Moale, deceased,
in the place and stead of the trustees named in the will,
and "with the same rights, powers and duties as were
bestowed and imposed on the trustees under the will, and
with the same allowance to them for commissions on

receipts and collections, and also on disbursements and investments," as were made to the acting trustee under the will, by a decree of the 18th December, 1861. The terms of this decree, as to the rate of commission to the then acting trustee, are stated in the opinion of the Court.

The appellee and his sister, Emily L. Dimmock, the children of Mrs. Emily L. Dimmock, deceased, were the *cestuis que trust.* The former having become of full age, and being entitled by the terms of the will, under which the trust was created, to have absolutely his share of the estate, on the 29th April, 1879, filed his petition, asking the Court to pass the proper order to that end, upon satisfactory proof as to the proper division of the estate. The trustees duly answered, admitting the allegations of the petition, and expressing themselves ready and willing to deliver his share to him. Testimony was taken, and the matter referred to the auditor to state a distributive account between the trustees and the appellee.

In this account, filed the 23rd July, 1879, the auditor awarded to the appellee the sum of $810.35, being one-half of the cash admitted by the trustees to be in their hands, less the auditor's and Court costs, and the further sum of $77.50, to make up the deficiency in the value of the stocks, ground rents, &c., awarded to him, as compared with the value of those awarded to his *co-cestui que trust.* The trustees had previously paid $1000 to the guardian of these *cestuis que trust,* for their maintenance, by the Court's order, passed the 27th June, 1878, five per cent. commission being charged against that sum, as a disbursement. The auditor allowed them this commission.

The appellants excepted to the auditor's report, because it did not allow them the commission of five per cent. upon the sums of $77.50 and $810.35, the first being taken out of the income to equalize the division, and the second being taken as one-half of the cash in the hands of the trustees, for investments, but not yet invested, and to be

disbursed ·to Charles Dimmock. And the appellee also'
excepted, because the account allowed the trustees a com-
mission of five per cent. on $1000 paid by the trustees to
the guardian of the *cestuis que trust,* under the order passéd
27th June, 1878.

The Court, (DOBBIN, J.,) on the 24th September, 1879,
sustained the exception of the appellee, and overruled the
exceptions of the appellants. The trustees appealed.

The cause was argued before BARTOL, C. J., BOWIE,
GRASON, ALVEY, ROBINSON and IRVING, J.

*Benjamin F. Horwitz* and *Wm. Pinkney Whyte,* for the
appellants.

*T. Wallis Blackistone,* for the appellee.

ALVEY, J., delivered the opinion of the Court.

Neither the original decree of 1861, nor the subsequent
order of 1870, appointing the appellants trustees in the
place of the former trustee, nor the audits that have been
stated and ratified in the case, are before this Court for
review. The only audit involved in this appeal is the
last, upon which the order was passed overruling the
exceptions of the appellants, and sustaining the exception
of the appellee, and from which the present appeal has
been taken.

The original decree of 1861 prescribes the law of the
case, and the sole question presented here is, whether
the order appealed from is in accordance with the proper
construction of the terms of the original decree. By that
decree, a rate of commission of five per cent. on the
amount of "all collections which he (the trustee) may
make as trustee of said estate, and also, a further commis-
sion of five per cent. on the amount of *all disbursements
and investments* which he has made or may hereafter

make," was fixed as proper to be allowed to the trustee of the estate. And in the order of 1870, appointing the appellants as trustees, this provision of the original decree was referred to as fixing the rate of commission to be allowed.

The Court below was of opinion, and so held, that payments over to the *cestui que trust* of moneys collected, and upon which commission had been allowed for such collection; were not disbursements, within the meaning of the original decree, in regard to the commission to be allowed. And in this we think there was no error.

There is no fixed statutory rule for the allowance of commissions to trustees in cases like the present. The allowance is made, however, with reference to the rates of commission allowed by statute in analogous cases (*Ringgold vs. Ringgold,* 1 *H. & Gill,* 11, 84); as in the cases of guardians, trustees or committees of persons *non compotes mentis,* etc.

In the case of a guardian, having the care and administration of the estate of his ward, the statute declares, that, for his care and trouble in the management of the estate, "the Court may allow any commission not exceeding ten per cent. on the *annual income* of the estate." *Code, Art.* 93, *sec.* 177. And in the case of a trustee or committee of a person *non compos mentis,* the statute provides, that the Court may allow to the trustee or committee, having the care of the person or estate of the *non compos mentis,* for his care and trouble, "any sum not exceeding ten per cent. on the *income and expenditures* of such *non compos mentis.*" *Code, Art.* 16, *sec.* 85.

In these cases, the guardian or trustee is not entitled to, and does not receive, commission on the fund that he pays over to the ward when he arrives at age, or to the *non compos mentis* when restored to reason, or to those representing such persons. It is only upon the amount of the receipts of income and the expenditures, during the con-

tinuance of the trust, that commissions are allowed. The word *disbursements*, used in the decree of 1861, was manifestly used as meaning expenditures, during the existence of the trust, as contradistinguished from payments over to the *cestui que trust.* Otherwise there would have been no reason for separating the commissions to be allowed, and allowing five per cent. on the collections, and five per cent. on the disbursements and investments; the allowance would simply have been ten per cent. on the income or collections, or ten per cent. on the disbursements, as the Court might have deemed proper.

That the word *disbursement* is used as meaning expenditure, or rather as synonymous with that term, may not only be seen by reference to the dictionary, but to the case of *Winder vs. Diffenderffer*, 2 *Bland*, 166, 208, and same case on appeal, 3 *Gill & J.*, 311, 348; and in that sense, it clearly does not embrace payments over to the *cestui que trust* of his own funds.

As we have already said, none of the audits and accounts stated in the case are properly before this Court, except the last and to which the exceptions were taken; and as the appellee has had a considerable portion of the record incorporated by his own direction, the cost of that part of the record must be taxed to him. The order appealed from will be affirmed, with costs to the appellee, with the exception just stated.

*Order affirmed and*
*cause remanded.*

(Decided 3rd February, 1881.)