EMILY M. JENKINS, by her Husband and next friend, CHARLES TAYLOR JENKINS *vs.* WM. PINKNEY WHYTE and BENJAMIN F. HORWITZ, Trustees.

*Sections* 88 *and* 89, *of Article* 16, *of the Code—Non-resident Infants—Order of Publication—Decree pro confesso—Jurisdiction in Equity—Ward in Chancery—Trustees, and their Commissions—Fee to Trustees for Professional services.*

The Superior Court of Baltimore City, by its decree passed in December, 1861, took jurisdiction of the trust estate of two non-resident infants. This jurisdiction was conferred on the Court by sections 88 and 89, of Article 16, of the Code. HELD:

1st. That by force of the statute, the decree bound the infants as effectually as if they had been summoned, and had made due defence by guardians.

2nd. That the law gave the publication made for them the effect of a notice, although in point of fact, by reason of their tender years, they were incapable at that time of knowing anything; and the decree *pro confesso* established absolutely against them the verity of every allegation of the bill of complaint.

The decree of December, 1861, ratified and confirmed the investments and disbursements which had already been made by the acting trustee, and fixed his compensation for past and future services, at the rate of five per cent. on the amount of all collections, and five per cent. on the amount of all disbursements and investments. By a subsequent order, W. and H. were substituted in the place of the original trustees. The same rate of compensation was allowed to them which had been allowed in the decree of December, 1861. In fixing the amount the order used these words: " The same allowance to them for commissions on receipts and collections, and also on disbursements and investments as were made to R. H. M. acting trustee, by the order and decree passed in this case on the 18th of December, 1861." HELD :

That this order did not contemplate any change in the compensation of the trustees, either in the rate of their allowances, or in the subject-matter on which they were to be charged; that although it

spoke of "receipts and collections" in the connection where the original order used simply the word "collections," the terms were intended to express the same meaning.

The trustees in settling with one of the *cestúis que trust* on her arriving at age, claimed credit for certain commissions which were objected to. These commissions in nearly every instance were embraced in reports which were made to the Court by the trustees, and which were ratified and approved by the Court. These reports were *ex parte*, and were sometimes ratified on the day they were rendered, and sometimes within a day or two afterwards; but in no instance was any notice of them given to the infants or to any one authorized to represent them. HELD:

1st. That these reports were in no respect accounts binding the interests of the infants as adverse parties.

2nd. That the Court by virtue of the parental relation which it holds to all wards of Chancery, has the power to order any expenditures and disbursements for the benefit of an infant placed under its protection; and it may fix the rate of compensation to be paid to a trustee for his services.

3rd. That it cannot determine any question of property adversely to its ward without giving him a hearing under circumstances where an adult would be entitled to be heard.

One of the objections taken was to the allowance of commissions on a sum of money which was already in the hands of the new trustees at the time of their appointment, as executors of R. H. M. one of the former trustees; and another to the allowance of commissions on a sum turned over to them by the other original trustee on his retiring from the trust. These sums of money were stated as receipts and collections by the trustees in their report, and for this reason commissions on them were claimed. HELD:

1st. That the Court which appointed them to succeed the former trustees, did not intend to allow them a commission on the principal of the trust estate, and would have had no power under the law to make such an allowance.

2nd. That when they took possession of the estate of the infants, they could not be considered as collecting it.

3rd. That the meaning of the order of December, 1861, was to allow them a commission on the receipts of income from the estate, and on the expenditures during the continuance of the trust, and on investments.

4th. That the report had none of the elements of an accounting *inter partes*, and the ratification and approval by the Court could not be considered an adjudication against the infants.

5th. That if it had been necessary when this report was made, to have the question settled whether these sums were to be considered as collections by the trustees, it would have been the duty of the Court to have the matter formally presented, and to give the infants guardians *ad litem*, and counsel, so that their rights might be adequately protected.

A portion of the trust fund was invested in a mortgage, and the trustees were allowed a commission upon the investment. The mortgage was paid, and a portion of the money re-invested in ground rents. HELD:

That the trustees were not entitled to commissions on the mortgage debt so collected, nor upon the amount re-invested in ground rents.

The trustees having invested certain money in a ground rent, and afterward discovering that the lot was unimproved cancelled the investment, and purchased another ground rent. HELD:

That the trustees were not entitled to commissions on the cancelled investment.

The allowance of a fee to the trustees for their professional services in filing a petition for the sale of certain shares of stock, affirmed on appeal, the Court being reluctant to interfere with the exercise of the large discretion possessed by a Court of equity in fixing the amount of compensation for services rendered to estates under its care.

APPEAL from the Superior Court of Baltimore City, in Equity.

The case is stated in the opinion of the Court.

The appellant excepted to the auditor's account, ratified by the Court below, for the following reasons:

1st. Because it allows to Wm. Pinkney Whyte and Benjamin F. Horwitz, trustees, one-half of five per cent. on $10,426.18, which was in their hands as principal, and

five per cent. on $1,039.62, which was received from Hall, former trustee, and which came into their hands as principal.

2nd. Because it allows the said trustees, on $10,929.24 as collections, and on $9,908.57, as disbursements and investments. Their collection of interest and income only amounted to $929.24, and their disbursements to $158.50; all the rest being either principal or reinvestment, on which the trustees are not entitled to commissions.

2rd. Because the said trustees are allowed five per cent. commissions on $1,666$\frac{66}{100}$, invested in ground rents, which investment they cancelled as per their ninth account, and reinvested the money, charging therefor a second commission.

4th. Because the said trustees are allowed on $3,400 for Baltimore City Stock, redeemed, treating it as collections. Said stock was a part of the *corpus* of the estate, which came into their hands when they were appointed trustees.

5th. Because it allows the said trustees, the whole of the fee of $25, named in the order of the Circuit Court of September, 23rd, 1880; fee of $100, named in the Court's order of October 9th, 1880, and fee of $25, named in the Court's order of September 28th, 1880.

6th. Because it allows the said trustees commissions on $152.95, being net proceeds of People's Gas Stock, reinvested by trustees.

The cause was argued before ALVEY, C. J., MILLER, IRVING, and BRYAN, J.

*T. Wallis Blakistone*, and *Severn Teackle Wallis*, for the appellant.

*Benjamin F. Horwitz*, and *Wm. Pinkney Whyte*, for the appellees.

BRYAN, J., delivered the opinion of the Court.

By the decree of the Superior Court of Baltimore City, passed in December, 1861, that Court took jurisdiction of the trust estate belonging to the two infant children of Mrs. Emily M. Dimmock, deceased. This jurisdiction was conferred on the Court by the 88th and 89th sections of the 16th Article of the Code. By force of the statute the decree bound the infants as effectually as if they had been summoned, and had made due defence by guardians. It ratified and confirmed the investments and disbursements which had been already made by the acting trustee, and fixed his compensation for past and future services at the rate of five per cent. on the amount of all collections, and five per cent. on the amount of all disbursements and investments. The order of February 25th 1870, substituted Messrs. Whyte and Horwitz in the place of the original trustees, one of whom had died, and the other had, at his own request been released from the trusteeship. The same rate of compensation was allowed to them, which had been allowed in the decree of December, 1861. In fixing the amount the order uses these words: "the same allowance to them for commissions on receipts and collections, and also on disbursements and investments as were made to Richard H. Moale, acting trustee, by the order and decree, passed in this cause on the 18th of December, 1861." It is very evident that this order did not contemplate any change in the compensation of the trustees, either in the rate of their allowances, or in the subject-matter on which they were to be charged. Although it speaks of " receipts and collections " in the connexion where the original order used simply the word " collections," the terms must be considered as intended to express the same meaning. The leading idea is perfectly clear that they were to be paid for their services as much as Moale was paid, and no more. These trustees have settled their account with one of the *cestuis que trust*, and the present controversy arises in the settlement of their account with the other.

The present appellant, now the wife of Charles T. Jenkins, having attained the age of twenty-one years, filed her petition against the trustees last mentioned, for an account and statement of the trust funds and property, and for a final settlement with her. The auditor stated an account embodying his own views, and one according to the directions of the appellant's counsel. To these accounts, exceptions were filed by the respective parties, and by agreement of counsel a *pro forma* order was passed sustaining the exceptions of the trustees, and overruling those filed on behalf of the appellant. The appellant's exceptions are six in number, and they all relate to commissions claimed by the trustees. These commissions have in nearly every instance been embraced in reports, which were made to the Court by the trustees, and which were ratified and approved by the Court.

These reports were *ex parte*, and were sometimes ratified on the day they were rendered, and sometimes within a day or two afterwards; but in no instance was any notice of them given to the infants, or any one authorized to represent them. When this suit was instituted the infants concerned became, according to the long-established practice of the Court, wards of chancery. *McPherson on Infants, m. p.* 103. The Court thereupon became bound to exercise a peculiar degree of care over their interest, and to protect them from all injury with a solicitude proportionate to their helpless condition. Hence it was proper that it should require the trustees to make frequent reports showing the condition of the trust property, so that it might be advised of everything which concerned the welfare of its wards. These reports were in no respect accounts binding the interests of the infants as adverse parties. The Court, by virtue of the parental relation which it holds to all wards of chancery, has the power to order any expenditures and disbursements for the benefit of an infant thus placed under its protection; and it may

also unquestionably fix the rate of compensation to be paid to a trustee for his services. It has a large and liberal discretion in these particulars, and in all others relating to the welfare of its ward, and the preservation of his property. But its jurisdiction is in all respects benignant and beneficial. It cannot determine any question of property adversely to its ward, without giving him a hearing under circumstances where an adult would be entitled to be heard. And the rules of chancery proceeding contain ample provisions for the proper litigation of any question in which an infant is interested. The usual time for a trustee of an infant to settle his account is when the infant attains the age of twenty-one years. But if good reason exists for having an account stated at an earlier period, the Court has power to order it. And when such account is stated, the infant has the rights which belong to other litigants; the Court will appoint a guardian *ad litem* to protect his interests, and will see that he has the benefit of counsel.

In the appellant's exceptions, no question is presented as to the rate of compensation to be paid to the trustees. This question was finally adjudicated by the decree of December, 1861, and the order of February, 1870.

The first exception objects to a claim of commissions on $10,426.18 which was in their hands as executors of Moale, the deceased trustee; and on the sum of $1,039.62, which was received by them from Hall, the retiring trustee. This claim is stated in the first report of the trustees, made on the twelfth day of May, 1870, and ratified and approved by the Court on the fourteenth day of the same month. These sums of money are stated as receipts and collections by the trustees in their report, and for this reason commissions on them are claimed. In point of fact they composed a part of the principal of the trust estate, which the trustees received when they entered upon the discharge of their duties. The larger sum was

already in their hands as Moale's executors, and they
merely charged themselves with the amount as trustees
in succession to Moale and Hall; and the smaller sum was
turned over to them by Hall, the retiring trustee. The
Court, which appointed them to succeed the former
trustees, did not intend to allow them a commission on
the principal of the trust estate, and would have had no
power under the law to make such an allowance. When
they took possession of the estate of the infants they could
not be considered as collecting it. If any litigation had
been necessary to enable them to obtain possession of it,
the Court would have provided by an order for the legiti-
mate expenses of the litigation, including, of course, suita-
ble compensation to counsel employed. The meaning of
the order of December, 1861, was to allow them a com-
mission on the receipts of income from the estate, and on
the expenditures during the continuance of the trust and
on investments. This question is clearly settled in *Whyte
and Horwitz, Trustees, vs. Dimmock,* 55 *Md.,* 452, where
this very decree came under the consideration of this
Court.

The report has none of the elements of an accounting
*inter partes,* and the ratification and approval by the
Court cannot be considered an adjudication against the
infants. The question is whether the trustees made cer-
tain collections. As naked a question of fact as was ever
presented to any tribunal; not in any respect a question
affecting the prerogatives of the Court. It was not whether
the trustees should be allowed a rate of commission; that
matter had been already settled. Nor was it a question
within the discretion of the Court, affecting its power to
order payments to be made for the benefit of the infants.
Of course, the trustees would be allowed credit for all
payments made by order of the Court. But this is no
payment made by the trustees to third persons which
they were compellable to make; it is a claim adverse to

their *infant cestuis que trust;* it is the assertion of a fact injuriously affecting their estate, which they were interested in controverting. Now a trustee is appointed to protect the interests of his *cestui que trust* against all the world; and it is a rare exception when he is allowed to assert an adverse interest of his own. Where the interests of trustee and *cestui que trust* clash, it is impossible for the trustee to guard the interests committed to his protection with that jealous vigilance which the law requires of him. And, therefore, when the conflict occurs, the law in its justice provides for the protection of those interests which can no longer be protected by the trustee. If it had been necessary when this report was made to have the question settled, whether these sums were to be considered as collections by the trustees, it would have been the duty of the Court to have the matter formally presented, and to give the infants guardians *ad litem,* and counsel, so that their rights might be adequately protected. The ratification of this *ex parte* report of the trustees has none of the elements of a judgment or decree on a question which was open to controversy. A decision of a question against a party who had no opportunity of being heard may be the declaration of a result; but it is not the adjudication of a Court of justice. It is of the very essence of a judgment that both parties should have an opportunity of being heard; and unless this indispensable preliminary be observed, the decision of any Court, of whatever dignity, is unwarrantably pronounced, and is void.

When publication was made for these infants, the Court acquired jurisdiction over the property mentioned in the bill of complaint by force of the statute. The law gave the publication the effect of a notice; although in point of fact, by reason of their tender years, the infants were incapable at that time of knowing anything; and the decree *pro confesso* established absolutely against them the verity

of every allegation of the bill of complaint. Thus far the statute compels us to go. But the statute does not compel us to declare that they had notice of everything else that was done in these proceedings, although they were absent in another State, and were under the incapacity of infancy.

In the ordinary instance, where the property of a defendant *sui juris* is sold under a decree against him regularly rendered, the case goes in regular course to the auditor to state the proper accounts; and after the auditor's report has lain in Court the prescribed time it comes before the Court for ratification. The party is bound to take notice of the regular course of proceeding in the Court; and this requirement imposes no hardship upon him. He has a reasonable opportunity of being heard on every question which may affect his interests. But he must receive special notice of all proceedings against his interest in the progress of the cause, which he could not know from the ordinary course of practice.

Take a case like the present. It would be impossible for any one to know at what time a trustee would present a report, or an account; and there is therefore a peculiar fitness that the party to be affected should have notice, so that he may controvert such items of charge as he may deem objectionable. In the case between these trustees and the other infant *cestui que trust*, reported in 55 *Md.*, 452, one of the exceptions involved the propriety of a charge of commissions on the sum of a thousand dollars which had been paid, under an order of Court, by the trustees to the guardian of these infants. It was insisted by the trustees that this payment was a *disbursement*, within the meaning of the order of February, 1870.

This Court, however, decided that the disbursements provided for by the order were only such expenditures as were made by the trustees during the existence of the

trust, as contradistinguished from the payments to the *cestui que trust*, and refused to allow the commission.

The printed record in the case just mentioned shows that the trustees had included a claim for commissions on this payment of a thousand dollars in their tenth report, and that this report had been ratified and approved by the Court, in the same way as their other reports were ratified and approved. This circumstance, however, did not prevent the Court below, or this Court on appeal, from disallowing the charge. The appellant's first exception must be sustained. The second exception of the appellant objects to the allowance of commissions on $10,000.00, which was the amount of the money loaned by the trustees to Isaac McKim on mortgage, and received by them from the mortgagor at the maturity of the loan; and also to the allowance of commissions on $9750.00, a portion of this sum, which the trustees reinvested in the purchase of two ground rents. The receipt of the principal of the estate at the expiration of an investment did not entitle the trustees to commissions. According to the proper construction of the order by which they were appointed, they were entitled to commissions on the income collected by them, but not on the principal or *corpus* of the estate. This point is settled by the case in 55 *Md.* They had already been paid a commission of five per cent. for investing this sum of ten thousand dollars; when the form of investment was changed from a mortgage to ground-rents, we do not think that they became entitled to an additional commission. This exception must be sustained.

The trustees invested $1666.66, in the purchase of a ground-rent from one Frederick Rice, and afterwards discovering that the lot was unimproved, they cancelled this investment, and purchased another ground-rent from the said Rice. The auditor allowed them commissions on both investments. The third exception objects to allowance of

Jenkins *vs.* Whyte and Horwitz, Trustees.

commissions on the cancelled investment. This exception is sustained. The fourth exception is sustained for reasons stated in considering the second exception.

In the fifth exception the appellant objects to the allowance of two fees of twenty-five dollars each, and one of a hundred dollars; all retained by the trustees by virtue of orders of the Court. . With respect to the fee of twenty-five dollars allowed by the order of September 28th, 1880, we see from the record that it was allowed by the Court to the trustees for their professional services in filing a petition for the sale of certain shares of the stock of the People's Gas Company. The Court has a large discretion in fixing the amount of compensation for services rendered to estates under its care, and we are very reluctant to interfere with the exercise of this discretion. We will not therefore disturb this order. We are unable to form any opinion about the order of Sept. 23rd, 1880, as the order does not appear in the record. But the Court was clearly in error in allowing the fee of a hundred dollars by the order of October 9th, 1880. The facts mentioned in the trustees' petition on which the order was founded did not show any services rendered to the infants, and therefore no case was presented in which the Court could properly exercise its discretion. And for the reasons stated in considering the first exception, the order being *ex parte*, this appellant has now a right to have it reviewed. This exception is sustained in part and overruled in part. The sixth exception must be sustained for reasons already stated.

The result of our opinion is, that the account stated under the instructions of the counsel for the appellant ought to have been ratified, with the exception of the two items of twenty-five dollars each for fees allowed by the Court below; and the account returned as the auditor's ought to have been rejected. It is unnecessary to incur the delay and expense of a new account. We shall therefore correct the account first mentioned, by deducting fifty dollars

from the amount of cash shown to be due to the appellant, and ratify it with this modification.

> *Order reversed with costs, and auditor's account of November 26th, 1881, modified, by charging to appellant the two items of counsel fees of $25.00 each, and as so modified, said auditor's account ratified and confirmed, and cause remanded.*

(Decided 19th June, 1884.)