LIZZIE A. KENNEDY ET AL. *vs.* GEORGE A. DICKEY
ET AL., TRUSTEES.

*Commissions of Conventional Trustees—Same Persons Executors and
Trustees—C*. *nversion of Real Estate—Partnership Real Estate.*

A testator directed that his estate should be managed by trustees for
seven years after his death and then distributed; and he gave a pecu-
niary legacy to one of the trustees payable at said period of distribu-
tion. The legacy was not paid exactly at the time designated and in-
terest thereon was claimed. *Held,* that if the trustee charged himself
with interest on the funds out of which the legacy was payable he is
entitled as legatee to interest on the legacy from the time it was payable
until it was actually paid.

Commissions are allowed in equity to a conventional trustee only as com-
pensation for services actually rendered in the execution of the trust,
and it is for the Court to determine what compensation is proper. If
no actual services were rendered when a sum of money was passed to
the credit of the trust estate, then no commission thereon should be
allowed to the trustee.

When persons named as executors in a will are also the persons to whom
the estate is given to hold as trustees, and they receive commissions
upon the *corpus* of the estate as executors, they are not entitled to ad-
ditional commissions for collecting the *corpus* when it is transferred to
themselves as trustees.

In such case the trustees will not be allowed commissions on a debt which
should have been collected by them as executors.

Trustees were directed by will to hold an estate for seven years, with
power to make sale of property as fully as the testator could; and at
the end of the period of seven years the trustees were directed to divide

the estate among testator's descendants, etc., as it would have been divided if he had died intestate. During the existence of the trust, the trustees sold certain real estate and invested the proceeds in personal property. *Held*, that this sale worked a conversion of the real estate, and the proceeds thereof are to be distributed as personalty.

Two trustees holding an estate under a testamentary disposition had been partners in business with the testator, who was their father. Under an equity proceeding receivers of the partnership affairs were appointed who by order of Court sold all the interest of the deceased in the partnership property to the two sons for a designated sum. *Held*, that these purchasers are not entitled, as trustees, to commissions on the amount of the purchase-money, paid to the trust estate.

A part of the sum so paid by the purchasers of the deceased partner's interest in the partnership property was for his interest in real estate owned by the firm for partnership purposes. In the settlement of the partnership business after the payment of debts and the adjustment of the claims of the partners *inter sese* there was no surplus. *Held*, that since real estate owned by a firm is treated in equity as such and not as personalty only after all the partnership debts have been satisfied and there remains a surplus of real estate, and since there was no such surplus in this case, the money paid by the purchasers for the real estate of the firm is to be divided among the testator's descendants as personalty.

Cross-Appeals from the Circuit. Court for Baltimore County (BURKE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BRISCOE, PEARCE and JONES, JJ.

*George Whitelock* and *Edward I. Koontz*, for L. A. Kennedy *et al.*

*Randolph Barton* and *James M. Ambler*, for Geo. A. Dickey *et al.*, Trustees.

PAGE, J., delivered the opinion of the Court.

In August, 1896, the late William J. Dickey died, leaving a last will by which he devised and bequeathed his entire estate to his wife and two sons, George A. Dickey and William A. Dickey, in trust to hold for seven years from the day of his death, paying the income therefrom to his wife and children.

and the daughter of a deceased child in equal proportions, with power to the said trustees to continue the business in which he was engaged, and to manage in all respects his estate (including the power to make sales of property), as fully as he had power to manage it himself; and at the end of that period to divide the estate among his wife and children and the daughter of his deceased grandchild, "as it would have been divided had he died intestate," except that before doing so, they should pay $60,000 to his son, William, as a special legacy. The will also appoints the same persons to be his executors. By a codicil he further devised that Mrs. Dorsey should hold her share of the estate for life only, and at her death it should be the property of her son, Edgar Dorsey, absolutely.

The persons so named in the will to be the executors and trustees, qualified as executors and proceeded to administer the estate. Subsequently, that is on 25th April, 1898, they as trustees and in their own right filed a bill in which they alleged they had closed their administration of the estate, and showed by itemized statements the character and amount of the estate that passed to them as trustees, and after proper proceedings the Court by its decree assumed jurisdiction of the trust. At the expiration of the seven years (the trustees having in the meantime conducted the business), the survivors (Mrs. Dickey having then died), made a report showing their proceedings and disbursements in the management of the estate, and filed therewith a "proposed plan of division," among the parties entitled. To this, Lizzie A. Kennedy and Edgar A. Dorsey filed exceptions, and from the decree of the Court passed 21st December, 1903, directing the manner in which the estate should be divided, both parties have appealed.

We will proceed to consider the objections made, as presented in the exceptions.

*First.* It is objected that there is an error, as appears on the face of the account, by which each of the appellants and appellees, have been awarded $66.67 less than their respective shares, even if the method of distribution submitted by the

trustees be approved. This is a mere matter of calculation and if the averment is correct, the statement must be properly adjusted.

*Second.* Objection was made to the allowance of interest upon the legacy of $60,000 to Wm. A. Dickey, to be paid on the expiration of the seven years, as set forth in the will of Mr. Dickey. That period expired August 13th, 1903, and interest was charged up to first September, 1903. The trustees also charged themselves with interest up to the first September, on the amount to be paid by them, derived from the sale of the deceased's interest in the firm property. The account shows a settlement as of the first September; and if the trustees charged interest up to that time, they ought also to be allowed interest on the amount coming to them.

*Third.* The allowance of commissions on the sum of $44,737.50, the total of investments made by the trustees is objected to. It was conceded there was a mistake in asking an investment commission on the whole proceeds of the Eutaw street property. The balance of the amount $14,737.50 commissions at 2½ per cent was allowed by the lower Court. We understand from the brief of the appellants that this is not objectionable to them, or any of them.

*Fourth.* As to the allowance to the trustees of

commissions on. . . . . . . . . . . . . . . . . . . . . .$581,776 11
This sum is made up of appraised value of
. securities and effects in the executors in-
ventory and cash $436. . . . . . . . . . . . . . . . . 417,157 11
And addl. valuation by the trustees. . . . . . . 164,618 00
_____
$581,775 11

The last sum of $164,618.00 was added by the trustees to the original valuation as made by the appraisers; but why that was done or by what authority is not shown by the record. On the original valuation of $417,157.11 the appellees as executors have received full commissions. The Court below decided that to allow commissions on this account now would be to subject the *corpus* of the estate to two commis-

sions which was never done in that Court.  This seems to be
in conformity with well established principles.  The items con-
tained in the account are parts of the principal of the trust
estate, and as was said in *Jenkins* v. *Whyte & Horwitz*, 62 Md.
434, when the trustees took possession of it, "they could not
be considered as collecting it."  It was, so far as these trus-
tees are concerned, a mere matter of bookkeeping, whereby it
was transferred from themselves as executors to themselves as
trustees.  For the collection of accruing interest, they were
entitled to receive commissions, to compensate them for their
trouble and expense.  If services had been rendered for the
collection of the *corpus*, the Court had power to make an
allowance out of the fund.  But there is no evidence in the
record that the trustees ever did more than hold the securi-
ties and collect the interest.  It was their duty, it is true, to
give the securities proper attention so that they should ascer-
tain, in time to take steps, if necessary, to prevent loss.  And
if they had found it necessary to be active in order to pre-
serve the fund, it would be within the power of the Court to
award them such suitable compensation as might be necessary
and proper.  And this is the reason of the rules laid down
in *Abell* v. *Brady*, 79 Md. 98, where it is said, that the com-
pensation to be allowed to a conventional trustee, is as com-
pensation "for actual services rendered by him in the execu-
tion of his trust," "as a reasonable and just indemnity for
services rendered by him in the discharge of his duties."  *N.
C. R. R.* v. *Keighler*, 29 Md. 572: *Natl. Bk.* v. *Dulaney*, 96
Md. 172; *Sanderson* v. *Pearson*, 45 Md. 484.

*Fifth.* As to the commissions on $408,866.83; made up as
follows:

| | |
|---|---:|
| Sale of furniture | $ 3,119.21 |
| Int. due Dickey at time of his death by firm of W. J. Dickey & Sons | 4,646.19 |
| Decedents int. in the firm of W. J. Dickey & Sons | 363,384.44 |
| Profits | 36,458.13 |
| Int. on do. from Aug. 13 to 1st Sept. | 1,258.86 |
| | $408,866.83 |

The furniture was appraised, and the appellees, as executors,
have been already allowed a commission on its appraised value,

and they are now entitled to commissions only upon the excess of the sales over the appraised value. The sum of $4,646.19 was due at the time of the death of Mr. Dickey, and should have been collected by the executors, and we agree with the lower Court that it constitutes part of the *corpus;* therefore the trustees are not entitled to commissions on that amount. *Jenkins* v. *Whyte. et al.*, 62 Md. 434; *Whyte et al.* v. *Dimmock*, 55 Md. 455.

*Sixth.* The objection is also made that the proceeds of the sale of the Eutaw street house is distributed as personalty, whereas it should have been treated as realty and so divided.

It appears that this property was sold by the trustees in 1902, with the consent of all the parties interested, and the proceeds, $30,000, invested in certain bonds. Whether these proceeds shall be treated as personalty or not for the purposes of distribution must depend upon the construction to be placed upon the intention of the decedent, as expressed in his will. If he had positively directed the trustees to make the sale, it is well settled that there would be an equitable conversion. *Sloan* v. *Safe Deposit & Trust Co.*, 73 Md. 239, but if there is only a discretionary power of sale, the conversion would not take place until the sale had actually taken place. 2 *Lewin on Trusts*, 1274, 8 ed.

This Court in *Cronise* v. *Hardt*, 47 Md. 436, said: "The conversion of real into personal property or personal into real, under a power in a will, takes place only for the purposes for which it is authorized; and so far as these purposes do not extend, or in so far as any of them do not take effect in fact, or in law, the property is considered as remaining in its former condition, and passes accordingly." "And where the land is properly sold by the trustee or executor and there is only a partial disposition of the proceeds of sale in fulfillment of the objects for which the sale was made, then the surplus belongs to the *heir or devisee*, as the case may be, as money, and not as real estate." It is necessary therefore to examine the will of Mr. Dickey, to determine 1st, the nature and extent of the power conferred upon the trustees, and 2nd, whether

after the disposition of the proceeds of sale, contemplated by the will, there is any surplus remaining that can be regarded as realty in the hands of the trustees, and to be distributed accordingly.

By the third clause of his will the testator devised and bequeathed all his estate in trust to his trustees with authority to manage it, including the power to make sales as fully as the testator himself "had power." The power to make sales was conferred for the benefit of the estate, to be exercised by the trustees as fully as an owner could have done. It included the right to make all such sales as the trustees deemed would be beneficial to the estate, and to invest the proceeds as their judgment should dictate. Having so exercised the power conferred upon them, it is required of the trustees at the end of seven years to divide the estate as it should then exist among his wife and children and daughter of his deceased child as if he had died intestate; that is to say that the division of the estate, then in their hands, should be made in the same manner as it would have been had the testator then died without leaving a last will. The estate and the rights of his wife and children thereto must therefore be determined by the kind and character of the property in the hands of the trustee at the end of the seven years.

In *Clements* v. *Babcock*, 56 N. Y. Sup. 526, the Court said : "The whole theory of conversion rests upon the intention of the testator and can only be invoked to aid and never to thwart such intention." Here the intention of the testator was that his estate should be managed and controlled by the trustees with power in their discretion, to sell and reinvest for the benefit of *all* those who were to take it at the expiration of the seven years; and then it was to pass in the nature and form in which it then existed, precisely as if he himself had so managed it up to that period.

The Eutaw street property, having been sold during the seven years by the trustees in the proper exercise of the power conferred upon them, the proceeds thereof that have been invested in securities must be regarded as personalty and so divided.

*Seventh.* It is also objected that the trustees are not entitled
to commissions on the sum of $408,866.83, the proceeds of
the interest of the deceased in the firm of W. J. Dickey &
Sons, first, because that, as to the income from his said inter-
est, as well as to the valuation of the decedent's interest in the
firm, amounting to the sum of $181,765, they have already
received full commissions; and second, as to the balance of
said fund, the same being included in the amount to be paid
by the trustees to the estate on account of the purchase by
them from the receivers of the decedent's interest in the firm
as hereafter more fully stated, the same is part of the *corpus*
of the estate with respect to which the said trustees have ren-
dered no service whatever. In reference to this objection, we
will not repeat what has been elsewhere said as to commis-
sions on the *corpus* of the estate. As to those amounts upon
which the trustees have already received commissions in their
capacity as executors or as trustees, no other commission can
be allowed. In respect to the residue of the fund, they do
not seem to have been put to any labor or trouble whatever.
The evidence shows that before the seven years had expired
the partnership affairs came into the hands of receivers, who
under an order of the Court sold all the interest of the de-
ceased therein to the sons, George and William Dickey. By
their agreement with the receivers, and by the order of the
Court, dated 14th August, 1903, in consideration of this
amount to be paid into the estate and upon the delivery of
proper receipts and releases, they were to have conveyed to
them all the property, real and personal belonging to the firm.
It seems to be clear therefore that the only thing the trustees
had to perform or did perform with respect to this fund, was
to comply with their contract, by accounting to the estate and
distributing it to those entitled; and those were not such ser-
vices as entitled them to commissions on the fund. This is
not like the case of *Natl. Bank* v. *Dulaney* (*supra*), where the
claim to commissions was founded upon the labor and risk
incurred and the time and attention necessarily bestowed upon
the performance of their duties. Here the sale was made by

the receivers to the two sons as individuals; and it must be pre-
sumed that in all the negotiations preceding the sale they were
acting for themselves.    All they did, or could do, under these
circumstances was to comply with the terms of their contract.
It must therefore be regarded that if commissions were to be
now allowed upon the amounts thus accounted for by them-
selves, under the order of the Court, it would amount in fact
only to an abatement of the purchase-money, and a compen-
sation to them for the performance of their contractual obli-
gations.    This case is nearer in one respect to that of *Jenkins*
v. *Whyte*, 62 Md. 432, where the sums of money on which
the commissions were claimed were stated "as receipts and
collections by the trustees in their report;" and it was held
that "the receipt of the principal of the estate at the expira-
tion of an investment, did not entitle the trustee to commis-
sions."    In *Abell* v. *Brady*, 79 Md. 100, the trustees claimed
an additional commission on the "*income*," having already re-
ceived two per cent as executors; and in *view* of the fact that
their duties in that case were distinct and separate the Court
held that an *additional* compensation of three per cent under
all the circumstances of that case would be just—but it was
also there held that the principle upon which compensation to
a conventional trustee is allowed is for "actual services" ren-
dered by him in the execution of his trust.    Here there were
no actual services upon which such allowance could be made.

*Eighth.*  Finally, it was contended that so much of the fund ·
to be paid into the estate by the trustees on account of their
purchase of the interest of the decedent in the firm of W. J.
Dickey & Sons, as was derived from real estate should be di-
vided as real estate and not as personalty.    It appears from the
record that the firm owned at the time of Mr. Dickey's death
a large amount of realty, and when the trustees purchased in
their own right all his interests therein their contract included
all of the firm's assets, not only the personal property, but
also the realty, that was accordingly conveyed to them.    We
do not understand it to be questioned that this real estate was
in fact partnership property.    The firm had purchased it for

the purposes of its business, had taken a deed as co-partners; it had been paid for out of the partnership funds; all of the taxes, improvements, repairs and expenses concerning it, was charged to, and borne by the firm; and its uses were devoted to the requirements and necessities of the firm, and not to those of the individual partners. The real estate thus owned by the partnership must be regarded in a Court of *equity* as the personal estate of the company, for all the purposes of the partnership. "This," it was said in *Goodburn* v. *Stevens*, 5 Gill, 1, "stands upon a familiar and just principle;" and "for this reason, in whatsoever name the legal title may reside, the estate is held in the eye of a Court of equity for the use of the partners as the *cestui que trust*, and if a partner dies the legal estate of which he was seized, as a tenant in common passes to his heirs or devisees clothed with a similar trust in favor of the surviving partners until the purposes for which it was acquired have been accomplished." *Ebert* v. *Ebert*, 5 Md. 358. Whenever therefore it becomes necessary to secure to either partner, his beneficial interest growing out of the partnership, as for instance, the payment of debts, or the adjustment of the balance due him from his partners, a Court of equity will regard the real estate as personalty, although the legal title may be in one only of the partners. But the conversion of realty into personalty can only be invoked for maintaining the respective rights of the co-partners, *Shearer* v. *Shearer*, 98 Mass. 109, and it therefore follows that when the obligation growing out of the partnership contract and dealings, have been satisfied, and there still remains undivided real estate, in which there are tenants in common, the legal title of each corresponds to his share in the partnership. *Wilcox* v. *Wilcox*, 95 Mass. 233; *Shearer* v. *Shearer*, 98 Mass. 109.

In *Ebert* v. *Ebert, supra*, this Court said that "real estate purchased with partnership funds and for partnership purposes, is to be regarded in a Court of equity as between the partners and other creditors, as personal estate, and for all other purposes it is to be considered as real estate, it descends to the heir at law and is subject to all the incidents of real estate."

The realty being thus held to be personalty in equity for partnership purposes, it cannot cease to be partnership prop- . erty until all the affairs of the partnership have been ,ended; that is, until the debts are paid, the balances between the co-partners adjusted, and the capital invested by each of them returned.    That, as was said in *Woodward—Holmes & Co.* v. *Nudd*, 58 Minn. 236, is the function of the personalty; and until the real estate has done that, it "has not fulfilled its functions as personalty or ceased to be partnership property." After all this has been done, however, if there remain a surplus that cannot be considered as partnership property, the realty can no longer be regarded as personalty for any purpose but each partner is a tenant in common, with a legal title corresponding to his share in the partnership.    In *Harris* v. *Harris*, 158 Mass. 443, that was said to be the rule in that State, though it was different in England and some parts of the United States.    It is maintained in *Campbell* v. *Campbell,* 30 N. J. Eq. 415; *Greenwood* v. *Martin*, 11 N. Y. 423; *Woodward—Holmes & Co.* v. *Nudd*, 58 Minn. 236; *Shanks* v. *Klein,* 104 U. S. 23.

In England, it is true, it seems to be held that a partner's share in the surplus, is always personal property for all purposes no matter of what it consists, after satisfying partnership liabilities and equities, it is devisable as personalty.    It was so held in *Darby* v. *Darby*, 3 Drewry, 495, a leading case on the subject; but as to realty, the now unanimous American doctrine is, (as stated in 1 *Bates on Partnership*, sec. 297), to be that after the partnership demands are satisfied the unexhausted surplus is real estate, and there is cited there a large number of cases to support that statement.    In the case at bar, after the payment of debts, the adjustment of the claims of the co-partners against each other, there was no surplus.    All the assets both real and personal were required to meet these demands—and there was nothing left to be treated as realty.    The fund therefore paid into the estate by the trustees, should be divided as personalty and not as realty.

It follows from what has been said, that the decree of the

lower Court must be reversed in part and affirmed in part and the cause remanded for further proceedings in accordance with this opinion.

> *Decree reversed in part and affirmed in part and the cause remanded for a new decree in accordance with this opinion, the costs of the appeals in both cases to be paid out of the estate.*

