## CAREY L. MEREDITH *v.* WASHINGTON LOAN & TRUST COMPANY, Trustee, et al.

*Land of Foreign Corporation—Judicial Sale After Dissolution —Parties—Appointment of Receivers.*

Even though proceedings to wind up the affairs of a foreign corporation were taken in the state in which its charter was granted, ancillary proceedings in this state would be necessary to dispose of real estate here.    p. 281

After nineteen years since the annulment of the charter of a Virginia corporation, without any disposition of its property in Maryland, apparently its only asset, the presumption is that no proceedings were taken in Virginia to wind up its affairs. p. 281

Where the charter of a corporation is annulled, the stockholders become in equity the owners of the assets, subject to the rights of corporate creditors, their interest being in the nature of an equitable tenancy in common, somewhat similar to that of partners.    p. 281

At the instance of any of the parties in interest, real estate in one of the counties of this state, belonging to a foreign corporation, the charter of which has been annulled, may be directed by the circuit court for the county to be sold for the benefit of all creditors and stockholders.    p. 281

The heirs of a deceased stockholder are not necessary parties to a proceeding for the sale of realty belonging to a corporation which has been dissolved, all stockholders living at the time of the dissolution being made parties.    p. 282

In a suit for the sale of real estate belonging to a foreign corporation which had been dissolved, to which all the stockholders living at the time of dissolution were parties, it was no objection to a sale that the owners of a small number of shares of stock were not made parties, their interest in the sale being similar to that of those stockholders who were parties and they being consequently in court by representation.    p. 282

For the purpose of a proceeding for the sale of property belonging to a corporation which had been dissolved, the ownership of the stock could be shown otherwise than by the production of certificates of stock, as by the production of the stock book, and other documentary evidence.                    p. 283

The descendants, heirs at law, and devisees, of deceased stockholders, not being necessary parties, lack of proof as to their identity was immaterial, this being a matter to be taken care of in the distribution of the proceeds of sale.                    p. 283

Lack of proof as to administration upon the estates of deceased stockholders, as to whether they died testate or intestate, and as to publication of notices to creditors of deceased stockholders, was also immaterial.                    p. 283

Lack of proof that no portion of the property had been sold and conveyed by the corporation by deeds which were not recorded, or sold by contracts conferring an equitable title, was also immaterial, since such contracts or unrecorded deeds would not affect the title of a purchaser without notice of their existence.                    pp. 283, 284

Where a sale of corporate property, which should have been made through receivers, was made through trustees, and after the sale the persons who acted as trustees were appointed receivers to receive the purchase money and join in the conveyance, a deed subsequently executed by them both as trustees and receivers was as effective as would have been a deed executed by the receivers, if they had been originally appointed to make the sale.
                    p. 284

Upon the sale by receivers of land belonging to a dissolved corporation, the interests of all parties in the land, whether stockholders or creditors, is transferred to the proceeds of sale, and it is for the receivers to safeguard those interests.    p. 284

*Decided June 29th, 1926.*

Appeal from the Circuit Court for Anne Arundel County, In Equity (Moss, J.).

Bill by William P. C. Hazen and others against the Washington Loan & Trust Company, Trustee, and others, to ob-

tain a partition sale of certain property. From an order ratifying a sale to the Meredith Lumber Company, Carey L. Meredith appeals. Affirmed.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Winson G. Gott,* with whom was *Nicholas H. Green* on the brief, for the appellant.

*James M. Munroe,* with whom was *Arthur Peter* on the brief, for the appellees.

ADKINS, J., delivered the opinion of the Court.

The bill of complaint in this case was filed by certain stockholders of The Chesapeake & Columbia Investment Company against the other stockholders of said company living, and the representatives of deceased stockholders, as trustees, heirs, or unknown heirs, the purpose of the bill being the disposition by sale of the real estate in Maryland standing in the name of said corporation.

The bill alleges that the company was incorporated under the laws of the State of Virginia in the year 1890; that the purposes for which said corporation was formed and the chief business to be transacted by it, were "to buy, hold, own, sell, exchange and lease real estate, and generally to do all such things as might be necessary to improve the same in any manner, and, to construct all works necessary for the maintenance of a residential settlement, and for the convenience of holders of portions of said property, as fully set out in said charter"; that said company purchased a large tract of land, situated on the Chesapeake Bay, in Anne Arundel County; that said property was subdivided into streets, blocks and building lots, and a number of said lots sold, but a large quantity of said land remains unsold, and undisposed of, title to which remained in said company until it was dissolved by due process of law by the State of Virginia, for non-payment of registration fees for the year 1904 and 1905, the charter and license of the said company having been re-

voked and annulled by said state on the 12th of April, 1907; that the company issued 1,476 shares of capital stock of the par value of fifty dollars per share, and at the time of the dissolution of said corporation certain persons held the number of shares of said stock set opposite their names (giving a list of names with the number of shares held by each, and noting those who were dead at the time of filing the bill), all the living parties being non-residents of the State of Maryland and all said deceased parties in their lifetime having been non-residents of said state; that the property of said company now consists of the remainder of said tract of land consisting of about two hundred and seventy-five acres; that the said holders of stock are now tenants in common in fee simple of the real estate mentioned in these proceedings; that said land is now not susceptible of partition amongst the parties entitled thereto, according to their respective interests therein, without loss and damage to the parties interested, and that it would be to the benefit and advantage of all parties concerned and interested in said land to have the same sold and the proceeds of sale divided amongst the parties entitled, according to their respective interests; that Thomas W. Smith, Nicholas H. Shea, Lawrence Cavanaugh, Minnie C. Taylor, George W. Driver, Henry K. Simpson and William Deitz, who in their respective lifetimes owned the number of shares opposite their names, died after the revocation of the charter of said company, but it is unknown to the plaintiffs, except as to said Smith, Cavanaugh and Shea, whether they died testate or intestate, and whether or not they left any heirs at law, and if so, who said heirs at law are or where they reside, and they are therefore making as parties defendant to this suit the unknown heirs and devisees (with the exception of said Smith, Cavanaugh and Shea) of the said deceased parties, who if living would be proper parties defendant to the suit; that Michael I. Weller died in 1904, leaving a will whereby he devised all of his property to his wife, the defendant, Rita Weller, absolutely.

The prayer of the bill was for a sale of the land for the purpose of partition, and for "such other and further relief as their cause and equity may entitle them to have."

There were filed as exhibits with the bill certified copies of the articles of incorporation, of a deed of the property to the corporation, of the annulment of the charter, of the wills of Thomas W. Smith and Nicholas W. Shea.

An order of publication giving notice to nonresident parties, known and unknown, was duly published. A guardian *ad litem* duly appointed answered for the infant defendants, and the trustee of Thomas W. Smith, and Emma J. Cavanaugh, widow of Lawrence Cavanaugh, of the adult defendants, also answered. As to the other adult defendants a decree *pro confesso* was signed.

Testimony was taken by the plaintiffs and on July 21st, 1925, the chancellor signed a decree appointing James M. Munroe and Arthur Peter trustees to sell the property.

On August 24th, 1925, the trustees filed their report of sale, from which it appears that, after filing their bond and advertising the property for sale in two newspapers published in Annapolis, two in Baltimore City, one in the City of Washington, and also by hand bills extensively circulated, they, at the court house door in the City of Annapolis, on August 18th, 1925, in the presence of a large concourse of people, offered the property at public sale, first offering it in lots, blocks and parcels, the aggregate of bids being $18,125, and then offered it as a whole, and sold it to Carey L. Meredith for the Meredith Lumber Company for $32,750.

Exceptions to ratification of sale were filed by the Meredith Lumber Company:

"1. Because this honorable court was without jurisdiction in the premises to pass the decree under which said property was sold.

"2. Because the title to the property so reported as sold to this exceptant is not a good and merchantable title.

"3. Because as to a part of the property so attempted to be sold to this exceptant the title thereto was not vested in the parties to this cause at the time of the sale.

"4. And for other reasons to be shown at the hearing of these exceptions."

It seems that one of the objections urged in the argument on the exceptions was that receivers should have been appointed to make the sale, and the court suggested the appointment of receivers to receive the purchase money and to join with the trustees in the conveyance of the property. At any rate, one of the plaintiffs filed a petition setting out, among other things, that on account of the death of certain holders of shares of stock it is uncertain to whom the proceeds of the sale of said real estate may be payable in some cases, and that petitioner is advised that, in order to protect the interest of all parties concerned, to pay any debts if any that may be due and owing by the corporation, and to ascertain with certainty the present holders of the stock of said corporation, who are entitled to receive the proceeds of the sale of the land, it is advisable that receivers be appointed to take charge of the assets of the company and make distribution thereof under the order of court, and praying for such appointment. Whereupon the chancellor signed an order appointing the said Munroe and Peter receivers of said company and authorizing them to unite with the trustees theretofore appointed in the sale of said property, and requiring them to give bond.

Subsequently the said Munroe and Peter as trustees and receivers filed a report in which they recited the filing of bonds by them both as trustees and receivers, and the previous advertisement as reported by the trustees, and reported that "the said trustees and receivers did in execution of the said decree heretofore passd and of the said order of January 20th, 1926, sell to the Meredith Lumber Company, a body corporate, on the 26th day of January in the year 1926, for the sum of $32,750, all the property described in these proceedings as "Arundel-on-the-Bay" as laid down on the plat thereof made by J. Revell Carr, surveyor, in July, 1925, and duly filed in this case, except certain lots which were excepted from said sale (and also excepted from the sale previously reported by the trustees).

Whereupon the chancellor passed the following order ratifying the sale:

"Ordered, this first day of March, 1926, that the sale made and reported by the trustees and receivers in this case, be and the same is hereby ratified and·confirmed, no sufficient cause to the contrary having been shown, although due notice appears to have been given as required by the order nisi passed in this cause. And the trustees are allowed the usual commissions and such proper expenses as they shall produce vouchers for before the auditor. And upon the payment of the purchase money, and the conveyance of the property in these proceedings to the purchaser of the same, the said trustees are directed to pay said purchase money, after the deduction of the costs of this proceeding, to said receivers; and said receivers are hereby directed to immediately give notice for the period of thirty days to the stockholders of this corporation living, as well as to the assignees of any of said stock, and to the heirs and personal representatives, to file with said receivers, or in the clerk's office of the Circuit Court for Anne Arundel County, all shares of stock in their possession. And, at the same time, give notice to the creditors of The Chesapeake and Columbia Investment Company to file their claims, if any, duly proven, with the said receivers or the clerk of the Circuit Court for Anne Arundel County, within sixty days from the first publication of said notice. Said notice to be published in one newspaper published·in Anne Arundel County and one in Washington, D. C.

"And heirs at law and personal representatives of deceased stockholders are, by said receivers, to be required to produce the proper proof to said receivers that they are entitled to receive the distributive share of the deceased stockholders they claim to represent; and such receivers are directed not to pay from this fund any money as the distributive share for said stock until said proof is produced.

"Said receivers are directed to distribute said fund by a proper account, among the stockholders of said company in proportion as the number of their shares bear to the amount of stock issued, and to the amount in hand to be distributed."

The appeal is from that order.

The learned chancellor filed with the order an exhaustive opinion which satisfies us that the sale was properly ratified. The price obtained was more than the value proved and, as found by the chancellor, more than the parties in interest expected. The value was tested by a public sale which had been extensively advertised both in the county where the property is situated, and in the nearby City of Baltimore, and in Washington, where practically all the stockholders resided, and which was largely attended. Prior to offering the property every effort was made to locate and reach the stockholders, and while the evidence does not entirely satisfy us that *every one* entitled to stock was definitely ascertained and made a party to the proceeding, it does show that the stock, if any, held by those who may not have been made parties could be only a very small proportion of the whole.

The most serious question raised by the exceptions is as to the jurisdiction of the court. It is urged that proceedings should have been taken in Virginia, where the charter was granted, to wind up the affairs of the corporation. But even if such proceedings had been taken, ancilliary proceedings in Maryland would have been necessary to dispose of real estate here. As a matter of fact, it does not appear that any proceedings were taken in Virginia, and the presumption is there were none, after so long a time since the annulment of the charter, without any disposition of the property in Maryland, which apparently was the only asset of the corporation. In such circumstances the stockholders were in equity the owners of the assets of the corporation, subject to the rights of any creditors there may have been; and at the instance of any of the parties in interest the Circuit Court for Anne Arundel County had jurisdiction to direct the sale of real estate in that county for the benefit of all creditors and stockholders.

The interest of the stockholders was in the nature of an equitable tenancy in common. It was not unlike that of

partners. *Mason v. Pewabick Mining Company,* 133 U. S. 50.

The heirs of a deceased partner are not necessary parties to a proceeding by the surviving partners for the sale of partnership realty. 30 *Cyc.* p. 627; 20 *R. C. L.* p. 993. See also *Harwood v. Jones,* 10 G. & J. 405; *Goodburn v. Stevens,* 5 Gill, 1; *Kennedy v. Dickey et al., Trustees,* 99 Md. 295.

There is sufficient proof of who were the living stockholders at the time the corporation was dissolved, and they are all parties to the suit. By analogy to the situation of surviving partners, that was enough to give the court jurisdiction.

It is objected that this is a suit for partition between alleged tenants in common, and that in such a suit all parties in interest who are *in esse* must be made parties to the suit. But the suit is for a sale and the division of the proceeds thereof, and there is a prayer for "such other and further relief as their cause and equity may entitle them to have."

The objection to defects of proof in reference to proper parties could apply to a very small part of the outstanding stock. In a suit of this character, those who may be the owners of this small number of shares can be held to be in by representation. Their interest in the matter of a sale is of the same character as that of those who are in and who constitute almost the entire ownership. It could not properly be held that under such circumstances these small interests are not fully protected. If, after the dissolution of a corporation, in a proceeding to sell real estate standing in the name of the corporation, it were necessary to make every holder of a share of stock a party to the proceeding, or to prove the ownership of every share of stock, before the court could order a sale, in many cases a sale would be impracticable, or at least would be so delayed as to work injury to all the stockholders. As a matter of necessity the principle of representation must be applied. *Miller's Equity,* sec. 29; *Leviness v. Consolidated Gas Co.,* 114 Md. 559.

Taking up in order the specific objections in appellant's brief:

1. It is asserted there is no proof who the stockholders are, and that only in one case was a certificate of stock filed as proof of ownership. The answer to that is that the production of certificates of stock was not the only way ownership could be proved for the purposes of this case. Geo. E. Edmund, who acted as special auditor, was present as a witness with the stock book and other documentary evidence, and testified who were the stockholders as shown by the stock book. In the case of one stockholder, whose name appeared on the stock book as the owner of one hundred shares, the witness testified and showed in his report that the stock appearing in the name of D. D. Stone is now held by the estate of N. H. Shea, deceased, the certificate being in the hands of the representatives of his estate, never having been transferred on the books of the company; and that N. H. Shea paid assessments on said stock under his name. This was evidence from which the chancellor could find that D. D. Stone was not a stockholder. The further objection that there is very little proof, if any, to establish who are the descendants, heirs-at-law, or devisees, of deceased stockholders, is unimportant, if they, as we have held, were not necessary parties. That should be taken care of in the distribution of the proceeds of sale.

2, 3 & 4. Absence of proof that estates of the alleged deceased stockholders have been administered upon; or whether they died testate or intestate; or that notices to the creditors of deceased stockholders have been published. These objections are covered by what was said above in answer to the first objection.

5. Absence of proof that only the portion of the whole property which is excepted in the report of sale represents all the property which had been sold and conveyed by the corporation by deeds which have not been recorded, or which may have been sold by contracts of sale under which persons may have an equitable title. The answer to this is that such contracts or unrecorded deeds, if any exist, would not affect

the title of a purchaser, without notice, actual or constructive, of their existence.

6. The fact that receivers have been appointed to take over the money from the trustees does not remedy the mistake in instituting these proceedings, if the proceedings should have been brought by the officers or directors of the corporation at the time of the forfeiture of the charter, or at the time these proceedings were instituted.

In answer to this objection it may be said, we have held that the court in Maryland had jurisdiction of the property and of the parties and that all interests were represented. In these circumstances, the court having jurisdiction to order a sale, it could do so through either trustees or receivers. Even if the sale through trustees was irregular, it was not illegal. Besides, appellant asserts his willingness to accept a deed for the property purchased if he can get a good and merchantable title to the same. The receivers appointed after the first sale united with the trustees in a second report of sale to the original purchaser. If a deed is executed by Messrs. Munroe and Peter both as trustees and receivers, the conveyance will have whatever virtue it could have derived from a deed executed by the receivers, if they had been originally appointed to make the sale.

The order of Court ratifying the sale carefully safeguards the interests of stockholders, by providing for duly published notice to them, and for adequate proof of ownership of stock and for the filing of certificates of stock. It also protects the interests of creditors. The interests of all the parties in the land, whether stockholders or creditors of the corporation, are transferred to the proceeds of sale, and it will be the duty of the receivers to safeguard those interests. As to the interest and rights of stockholders in the real estate of a corporation after dissolution, see 7 *R. C. L.* sec. 745; *Craycraft v. National Building & Loan Assoc.,* 117 Kentucky, 229; *Service Lumber Co. v. Sumpter Valley Ry. Co.,* 81 Or. 32, and cases there cited; *Taylor v. Interstate Investment Co.,* 75 Wash. at p. 496; *Thompson on Corporations* (2nd Ed.), sec. 6589; *Gasque v. Ball,* 65 Florida, 383; *Baldwin v. John-*

*son,* 95 Texas, 85; *Stearns Coal & Lumber Co. v. Van Winkle,* 221 Fed. 590; *Morawetz on Private Corporations* (2nd Ed.), sec. 1032; *Machen, Modern Law of Corporations,* sec. 1163; *Mason v. Pewabick Mining Co.,* 133 U. S. 50.

Carey L. Meredith is the appellant in this case. The sale was reported to the Meredith Lumber Company and the exceptions were filed by said company. It does not appear why the company was not the appellant. But no point was made of this. We have assumed that Meredith is the company and have considered the appeal as if properly taken.

We hold that a good merchantable title can be conveyed by the trustees and receivers to the purchaser and that the order appealed from must be affirmed.

> *Order affirmed, costs to be paid out of the proceeds of sale.*

Offutt, J., concurs in the conclusion.