THE NATIONAL BANK OF BALTIMORE ET AL. *vs.* HENRY S. DULANEY ET AL., TRUSTEES—R. E. L. MARSHALL, ADMR., ET AL. *vs.* THE NAT. BANK OF BALTIMORE.

*Appeal—Order Directing Allowances to be Made in Auditor's Account— Fees and Commissions to Attorneys and Trustees Under Administration in Equity of an Assignment for Benefit of Creditors.*

An order of Court directing an auditor in stating an account distributing the funds of an estate to make certain allowances to trustees and other persons for services rendered, is not final and conclusive, but when the allowances so ordered are stated in the account, they may be excepted to, and upon appeal from the order ratifying the final account, the propriety of the allowances is open to review.

A partnership executed a deed of trust for the benefit of creditors by

which real estate, open accounts, trade-marks, formulæ and the good will of a business were conveyed to the trustee. A Court of equity assumed jurisdiction of the administration of the trust and appointed two other trustees, nominated by the creditors, in addition to the trustee named in the deed. An important part of the business in question had been carried on in England. The trustees employed as their counsel a leading lawyer of Baltimore who advised them with excellent judgment for some years as to litigation both here and in England concerning the trust estate. The trustees also employed, by authority of the Court, another attorney to go to England and there represent them in winding up the business. This agent remained abroad about six months and succeeded in making a sale of the trade name, good will, etc., of the St. Jacob's Oil—the principal asset of the estate—for nearly $200,000, which sum was about $50,000 in excess of its book value. The trustees collected from the sale of real estate and other sources about $100,000 additional. An auditor's account distributing the fund was stated and exceptions were taken to the allowances and compensation therein made by the Court to the above-mentioned parties for their services. *Held*, upon the facts,

1st. That a fee of $10,000 to the counsel for the trustees, in addition to a previous payment of $1,200, was proper and reasonable.

2nd. That the attorney who represented the trustees in England and there effected a sale of the principal asset is entitled to a commission of seven per cent upon the amount realized from that sale, in addition to his actual expenses.

3rd. That the trustees are entitled to the usual commissions on the sales of real estate and to two per cent on all other sales.

Cross-appeals from an order of the Circuit Court of Baltimore City (STOCKBRIDGE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, PEARCE, SCHMUCKER and JONES, JJ.

*Allan McLane*, for the National Bank of Baltimore.

*George Whitelock*, for the People's Bank.

*John Prentiss Poe*, for R. E. L. Marshall, administrator.

*Frank Gosnell*, for Dulaney *et al.*, trustees.

*Joseph C. France* (with whom was *George R. Willis*, on the brief), for F. T. Homer.

*Randolph Barton* filed a brief for Dobler & Mudge.

Jones, J., delivered the opinion of the Court.

The record about to be examined brings up three appeals which stand upon the docket of the preceding term as Nos. 23, 24 and 25. The expression of views which follows will dispose of the questions which these appeals present here. These questions are so related under the facts and circumstances which give rise to them, and which are set out in the record, that they may be conveniently treated in one and the same opinion.

The record shows that prior to the 18th day of December, 1899, Christian Devries and Minnie A. Devries, his wife, had been as partners under an agreement entered into prior to their marriage, carrying on a business in the city of Baltimore in the firm name of "The Charles A. Vogeler Company." The business so carried on consisted in the manufacture and sale of patent medicines—principally an article sold under the name of "St. Jacob's Oil." Besides being carried on in Baltimore the business was operated also in San Francisco in this country; and in Toronto (Canada), Australia, Paris and London. In the latter place was the principal branch office. On the date just mentioned Christian Devries and his wife made to Henry S. Dulaney, who had been the business manager of the partnership in Baltimore, a deed of trust, for the benefit of creditors, of all the property of the said partners and of "each of them," in which the trustee was empowered to take possession of all of said property, convert it into money and apply the proceeds to the payment of all the debts of the grantors in said deed after paying all expenses incurred in the execution of the trust created, "including a reasonable commission" to the trustee "for his services in the performance of the duties * * * imposed upon him not exceeding the amount of compensation allowed in cases of insolvency in the insolvent Courts in the State of Maryland for like services." The property which passed to the trustee under the deed from the partnership was in large part, as expressed in the deed, "patent medicines and trade-marks, formulæ and receipts for the manufacture thereof, the value of which largely depends on the

management and sale of the same." An exact statement of the assets so passing is not given, but they seem to have consisted, approximately, of merchandise $15,000, book debts and cash $14,800, real estate, the saleable value of which proved to be $71,700, machinery $5,000, and the good will and trade-marks of the business, the book value of which was placed at $137,000—aggregating the sum of $243,800.

Henry S. Dulaney, the trustee named in the deed, accepted the trust, filed a bond and immediately applied to the Circuit Court of Baltimore City to assume jurisdiction of the trust. This the Court did by its order passed on the 28th of December, 1899. Soon thereafter creditors, treating the deed of trust as an act of bankruptcy on the part of the grantors in the deed, filed a petition in the United States District Court of Maryland to have them adjudicated bankrupts and succeeded in securing an adjudication of bankruptcy against them. The parties to this proceeding and counsel who represented them afterwards concluding that it would be more advantageous to the creditors to have the trust administered under the deed of trust upon conditions that were proposed and agreed to, the decree in bankruptcy was by agreement set aside and vacated. One of the conditions of this agreement was that there should be associated with Mr. Dulaney in the administration of the trust two other trustees who should be taken from those more closely identified with the interests of the creditors concerned with such administration. To give effect to this part of the agreement a petition was filed on the 21st of February, 1900, in the Circuit Court of Baltimore City by Mr. Dulaney asking that, in order that he might perform the duties of the trust devolved upon him "in the most satisfactory manner and to the best interests of the parties concerned therein," he might have two associates "selected by the creditors, or a great majority of the creditors, of the trust estate with whom he could 'consult and confer' and who could 'otherwise aid him him in the performance of said duties ;' ' and indicated Mr. Lawrence B. Kemp and Mr. John B. Ramsay as having been selected by a great majority of the creditors to be so associated with him.

The Court on the same day, by its order, appointed Mr. Kemp and Mr. Ramsay trustees in accordance with the prayer of the petition. The gentlemen named accepted the trust and united with Mr. Dulaney in the management thereof.

Out of this management and certain proceedings in connection therewith have arisen the questions to be determined upon these appeals. These questions are presented by exceptions to an auditor's account stated between these trustees and the trust estate under their management; and filed in Court on the 4th day of February, 1902; and upon which the Court took final action on the 10th day of March following. These exceptions (as far as they are before this Court) are directed against the allowances made, in the Court's order, of commissions to the trustees; of compensation to Mr. Francis T. Homer for services rendered the trust estate; and of counsel fee to the late Col. Charles Marshall for professional services rendered as the legal adviser of the trustees, and in the litigation in the proceedings in bankruptcy against the grantors in the deed of trust. The appeals we are considering were taken from the final action of the Court upon these exceptions.

The circumstances in view of which these allowances were made, and the proceedings below in reference thereto appear to be as follows: The late Col. Charles Marshall had, for many years prior to the making of the deed of trust, in connection with which the litigation, with which we are now dealing, arose, been counsel and professional adviser for the Charles A. Vogeler Company. From the creation of the trust by the deed in question throughout the management of the trust thereunder he occupied the same relation to the trustees. He was their legal adviser in all matters pertaining to their duties and the interests of the estate in their hands; represented them in the bankruptcy proceedings, already alluded to, in the United States District Court of Maryland; and was their adviser in like proceedings, which were instituted against the grantors in the deed of trust in the English Courts, in connection with counsel there employed; and in which the result was favorable to the contention set up against these proceed-

ings, by the trustees here, in accordance with his legal opinion. After the trustees had filed a report and account of the management of the estate in their hands with a view of closing the trust Col. Marshall filed with the Court a petition setting forth the extent and character of services rendered by him to the trustees in the conduct of the trust; alleging that he had received for such services the sum of $1,250 on account; and asking that the Court direct an allowance by the auditor, when the proceedings should be before him to state an account, a fair and reasonable compensation for such services in addition to the amount already received. This petition was accompanied by the certificate of two, among the leading lawyers of Baltimore, to the effect that $13,750 would be a reasonable allowance to be made in full for the services mentioned in the petition. Upon this petition and certificate the Court passed an order on the 29th of January, 1902, directing the auditor to allow to Col. Marshall "the sum of twelve thousand five hundred dollars being in full for all compensation for all services by him rendered the trust estate of the Charles A. Vogeler Company and the trustees thereof." This allowance was accordingly made in the account of the auditor; and among other matters in the account, was made the subject of exception by creditors of the estate. The Court by its order of the 10th of March, 1902, sustained the exceptions to this allowance to the extent of reducing it to ten thousand dollars and directed that this last-named amount be "allowed and paid" to Col. Marshall "as fees and compensation for professional services rendered" to the trustees—the same "to be in addition to the sum of $1,250" already paid him by the trustees.

This action of the Court is one of the matters involved in the appeal of the creditors of the Charles A. Vogeler Co., in case No. 23—the appellants in that case insisting that the amount of the allowance in question ought to have been still urther reduced and that the amount allowed by the last mentioned order of the Court below is more than is reasonable and proper. It is also the subject of appeal in case No. 25, brought up by the administrator *c. t. a.* of Col. Marshall, he

having died since the passing of the final order of the Court
below in the premises ; and in support of this appeal it is con-
tended that the Court below erred in making a reduction in
the amount of compensation allowed in its previous order of
the 29th of January, 1902.

In addition to, and somewhat in connection with, the pro-
fessional services of Col. Marshall just alluded to, the trus-
tees engaged also the services of Mr. Francis T. Homer, of
the Baltimore Bar.  On the 28th of February, 1900, they
filed in the Court below a petition setting forth that the
Charles A. Vogeler Company had a branch office for business
in London, England, where there were important interests to
be looked after in connection with the management of their
trust ; that there were "trade names there and formulas used"
in the business of the company of considerable value ; that
the agent who had been in charge of the business of the com-
pany there had so conducted himself in reference to the bus-
iness as to excite their fears "as to the safety and security of
the assets" of the company ; that these fears had been "in-
tensified by the institution in London Courts of proceedings
in bankruptcy and the appointment there of a temporary re-
ceiver ; that the conditions there caused them to believe that
the best interests of the trust estate would be subserved by
the employment by them of "some person learned in the law
to proceed to England after having been duly vested by power
of attorney and orders of Court with ample authority to
represent" the petitioners and "to take needful and proper
steps"  *   *   *   "to preserve and protect the assets of the
estate located in England" &c ; and therefore they asked that
an order be passed authorizing them to employ some member
of the Baltimore Bar to go to Europe for the purposes
indicated, and to contract with him "to pay all proper and
necessary expenses" incident thereto "and such reasonable
compensation" as to the Court might "seem right and proper."
On the same day the Court below passed an order on this
petition of the trustees in accordance with the prayer thereof,
and, authorized them to expend not exceding $1,500 to defray

the expenses of such attorney as they might employ and " to contract to pay said attorney such fee as " might " seem right and reasonable subject to the ratification and approval " of the Court. The said attorney was to make full report to the Court for its " ratification and approval " of " his services performed and all his expenditures incurred ; " and the Court reserved the right " to modify or alter " the order " from time to time as to the Court " might " seem right and proper."

Under the authority conferred by this order the trustees engaged the services of Mr. Homer for the purposes indicated in their petition to the Court ; and he proceeded to London and there took charge of, and spent a considerable time in the aggregate, in attending to matters pertaining to the management and settlement of the trust estate in their hands. He afterwards made a report to the Court giving a detailed statement of services rendered by him, and asked of the Court the allowance of a fair and reasonable compensation therefor. The most important service of a tangible and positive character reported as rendered by him was the sale to a syndicate formed in London of the business, good will and trade-marks of the Charles A. Vogeler Company for the sum, in our currency, of $194,847.92-100. Accompanying this report and petition was a certificate of a member of the bar in Philadelphia, who represented creditors, to a large value, of the trust estate ; and who certified to having some special acquaintance with the matters detailed in the report, to the effect that fifteen (15) per cent on the amount realized from this sale, would be a reasonable and proper compensation to Mr. Homer for his services. Two of the most eminent members of the Baltimore bar certified to the same effect. On this petition and recommendation the Court passed an order that the auditor in stating his account allow to Mr. Homer " a fee of twenty-five thousand dollars for the services rendered  *  *  *  such allowance, however, to be subject to the usual exceptions." Upon the coming in of the auditor's account this allowance was excepted to by creditors as being unreasonable ; and the Court by its order of the 10th of March, 1902, sustained the exceptions to

the extent of reducing the allowance ; and ordering in lieu thereof that " there be allowed and paid to the said Francis T. Homer as compensation for professional and other services a commission of 10 per cent on the amount of the said sale, $194,847.92 or the sum of $19,484.79." This order and direction of the Court is another matter appealed from by the creditors of the trust estate and embraced in appeal No. 23.

The remaining matter involved in the appeals here relates to the allowance of commissions to the trustees who entered upon their duties in February, 1900, and on the 16th of December, 1901, filed a report and account of their management of the trust estate ; and of all their receipts and disbursements in connection therewith, except certain matters embraced in a supplemental report of the 23rd of January, 1902, relating to the business of the London branch. In this report they craved allowance for all of their expenses ; and asked for compensation by way of commission as should "seem adequate, right and proper having due regard for the extraordinary services by them rendered." On the day of the filing of the principal report, 16th of December, 1901, the Court passed an order referring the report and account and all the proceedings in the cause, which the trustees asked in their report to have done, to the auditor to state an account and directed as to their commissions as follows " that the said trustees be and they are hereby allowed on all sales of real estate by them made the usual commissions as fixed by the rule of Court in such cases, and that they be allowed on the amount realized from the sale of the good will, trade-marks, formulæ, etc., amounting to $194,847.92 commissions at the rate of four *per centum* and upon all other sums from all other sources by them received commissions at the rate eight *per centum* as compensation for their services rendered as in said petition set out."

The auditor's account allowed commissions in accordance with this order and showed that in addition to commissions on sales of real estate and on " the sale of the good will, trade-marks, formulæ, etc.," an allowance of commissions on the sum of $238,453.41 at the rate of 8 per cent. Upon hearing

the exceptions to the auditor's account, which embraced these allowances, the Court in its order of the 10th March, 1902, sustained the exceptions to them to the extent of reducing the commissions on the sum of $238,453.41 from 8 per cent to 6 per cent and on the sum of $194,847.92 from 4 per cent to two (2) per cent.

The action of the Court in reference to these allowances is involved in the appeal No. 23 where it is insisted by the appellants (creditors) that the allowances, as finally made by the Court, are still in excess of what was reasonable and proper under the circumstances, and is also the subject of appeal by the trustees in appeal No. 24, who insist that the amounts allowed as commissions to them in the final order of the Court below in respect to the two amounts just named are less than they are entitled to receive, and further that the previous order of the Court of the 16th of December, 1901, fixing commissions to be allowed by the auditor, not having expressed that these allowances were to be made subject to exception, the order was final in its character and effect, and after enrolment it was beyond the power of the Court below to disturb it upon exceptions to the auditor's account. The last-mentioned ground of appeal applies as well to the order of the Court of the 29th of January, 1902, making allowance for a fee to Col. Marshall, but it was not urged in the oral argument on his appeal, and though referred to in the brief of counsel for his estate it was not there further pressed.

The question raised as to the effect of the two orders last mentioned upon the right of the Court to deal with them as it did in its order of the 10th of March, 1902, is the only controverted legal question involved in the appeals brought up in the record, and before proceeding further with a discussion of the cases, that will be settled. The action of the Court below, as it respects the orders in question, is in accordance with the generally accepted and recognized practice. Orders of the character of these have not been regarded or treated in practice as having any conclusive effect but as being open and subject to rescission or modification when final action is taken

upon the auditor's account.   An order of the nature of these is not a decision upon an issue, nor an adjudication of right between parties such as will " draw after it the coercive process of the Court." It is not an order to pay money. It is simply a direction to the auditor making for that officer, in respect to the subject-matter of the order, a *prima facie* basis for the statement of his account and the adjustment of the rights of the parties to the funds to be thereby distributed. It would be a rule of practice fraught with injustice if some of the parties, in cases such as the one giving rise to these proceedings, could by summary, *ex parte* orders secure absolute rights against the funds in the hands of the Court. It would be manifestly impracticable to extend such right to all parties in interest and therefore such rule would be of unequal operation. If orders, so obtained, are to be treated as absolute and final, leaving to parties in interest, feeling aggrieved by them no redress except by appeal, as is insisted, this would be putting upon such parties the inconvenience and burden of an appeal as to matters affecting their rights in regard to which they have been given no previous opportunity to be heard, and as to which no effective redress could be had by appeal, because orders of the nature of those under consideration deal with matters which, to pass upon advisedly and according to their merits, require that information should be given to the Court by evidence. The hindrance to proceedings and delay of the distribution of funds being administered in Courts of equity that would be caused while such appeals were being prosecuted and determined are further and by no means unimportant considerations, for denying, in practice, to orders such as those in question a final and appealable character.

Not only has the practice in reference to orders such as those here in question been, as has been indicated, contrary to the contention here set up as to their character; but the question presented in the present contention has been directly passed upon by this Court in the case of *Mahoney* v. *Mackubin, Trustee*, 54 Md. 268. By reference to the original record in that case it appears that Mr. Mackubin filed in the cause in

the Court below a petition to the Court setting forth reasons why he should be allowed a fee by way of additional compensation for services rendered in the case, upon which petition the Court passed an order as follows : " Ordered this 25th day of November, A. D. 1878, that the petitioner be granted an additional allowance as prayed, of one hundred and fifty dollars." The auditor made the allowance as directed by the order. This allowance, among other things in the auditor's account, was excepted to and the Court below overruled the exceptions as to it and ratified the allowance. On the appeal to this Court, 54 Md., at pp. 276–277, it was said by MILLER, J., as to the allowance in question : " This sum was allowed Mr. Mackubin, the mortgagee, for professional services rendered by him in defending the order ratifying the sale, and for his personal expenses in attending to the taking of testimony on that subject. The allowance was made by the auditor under a special order of the Court dated the 25th of November, 1878. That order was passed on the *ex parte* petition of Mr. Mackubin, and we are clearly of opinion it is open for review on this appeal." The Court then goes on to decide that it was error in the lower Court to have overruled the exceptions as to this allowance ; and that the exceptions thereto ought to have been sustained, and accordingly reversed the action of the lower Court in this particular. With this direct adjudication of the question here raised as to the effect of the orders of the 16th of December, 1901, and 29th January, 1902, it will be unnecessary to extend this opinion by a reference to and review of authorities cited to this point in the brief on behalf of the trustees in their appeal No. 24. These authorities have been examined and are readily distinguishable from the present case. None of them, other than that already cited, goes to the question presented in the contention we have just been considering.

It follows from what has been said that the matters, embraced in the orders which were made the subject of this contention, were properly before the Court below upon the exceptions to the auditor's account ; and are now properly before this Court for review upon the present appeals.

The further inquiry now to be made is one of fact.   There can be no doubt of the right of trustees to have the aid of counsel where the interests of the estate in their hands and the nature of their duties are such as to make necessary or proper a resort to legal advice and assistance; nor of their right to employ, under the sanction of the Court supervising the trust, agents in the prosecution of the business in hand, where peculiar conditions make this beneficial to the trust; and to have compensation allowed for these purposes from the trust funds.   In the case at bar the propriety of the employment by the trustees of the services of gentlemen of the bar, which appears from the proceedings recited, is not made a question; and the controversy is restricted to the reasonableness *vel non* of the compensation allowed for such services, and of the commissions allowed to the trustees for their own services.   In deciding such a question little or no assistance can be had from reference to adjudicated cases.

To determine the value of services rendered in any given case reference must be had to the circumstances and conditions of that case; and no case is likely to be without its own special and peculiar features.   It may be said also that such a question is not to be decided simply according to the arbitrary individual opinions of those constituting the trying tribunal.   The judicial mind must have respect to the evidence offered for its instruction and guidance.   We may now take up the question of the propriety of the allowances for services rendered the trust estate made by the Court below and here in controversy.

1st.  As to the fee allowed Col. Marshall.  An outline of the professional services rendered by him to the trust estate has already been given.   These services extended over the whole period of the management of the estate by the trustees; and enough appears in a general way to show that they were important and valuable to the interests of the estate.   In attempting to assign a value to such services regard is to be had to the eminent and commanding position of Col. Marshall at the bar of the State; and as suggested in the brief of counsel, his high character and professional standing give weight to his

own estimate of an appropriate value. Specific valuation of
them, from extrinsic sources, appears in the record in the cer-
tificate of the two members of the bar already alluded to,
whose opinions will be readily recognized as entitled to the
most respectful consideration; and in the evidence given under
the exceptions to the auditor's account, in regard to these ser-
vices, by the trustees, all of whom appear as men of large
business experience. One of these trustees testified that his
own idea of the compensation that would be allowed Col.
Marshall was $10,000, but disclaimed all intention to call in
question the allowance made by the Court. Another testified,
in response to a direct inquiry as to his opinion of this allow-
ance by the Court, that it was "a reasonable allowance." This
testimony given in the trial of the exceptions to the auditor's
account had reference of course to the allowance, made in the
account of $12,500 under the Court's order of the 29th of
January, 1902. In addition to this testimony a leading mem-
ber of the Baltimore bar of large experience, offered as a wit-
ness on behalf of those excepting to the account of the au-
ditor, testified that he thought five or six thousand dollars
"would be a fair compensation" to Col. Marshall or "perhaps
all told five thousand dollars in addition to the $1,250 which
he was paid in the early stages of the case." We think the
final order of the Court below in respect to this controverted
allowance reconciles the testimony in regard to it in a fair and
conservative manner and that its action ought to be affirmed.

2nd. As to the allowance of the fee to Mr. Francis T.
Homer. The nature of the services for which Mr. Homer
was employed, and the duties involved in his employment are
set out in the petition of the trustees of the 28th of February,
1900, already referred to. These services and duties, as de-
scribed in the petition, were of a very delicate and responsible
character; and that they should be performed with successful
results was evidently regarded as very important to the interests
of the trust estate. Mr. Homer's discharge of the trust com-
mitted to him is admitted to have been "good work and well
done." Inquiry then as to value of services rendered by him

does not involve any suggestion of dereliction of duty or of failure of performance ; but requires only the fixing of a pecuniary value for work performed with fidelity and success. That these services were important and valuable to the estate in the hands of the trustees is made evident by the disclosures of the record. This appears from Mr. Homer's own testimony and from the testimony of the trustees charged with the management of the trust estate, and having knowledge of the conditions and the situation with which they were confronted and with which they had to deal through the agency of Mr. Homer. One of the trustees (Mr. Ramsay) said "Mr. Homer did everything that is embraced in that petition. His service was exceedingly valuable to this trust estate and I would not like to say what his services were worth. He was over there probably six months or more." Equally emphatic as to the valuable character of these services is the testimony of both of the other trustees. One of them (Mr. Dulaney) who had .the more immediate charge and active management of the trust said, referring to the sale of the good will of the business, "that the result of the sale has brought to the trust estate a profit of $52,000." We do not see, from what is disclosed in the record, any good reason for discrediting any of this testimony. On the contrary the disclosures there tend to a confirmation of it. As we have seen, the most valuable service, reported by Mr. Homer, to have been rendered by him, in its palpable results, was the sale of the good will of the business of the Charles A. Vogeler Company. It has been suggested that when he went to London he had a purchaser for this good will before him, and that the service rendered in that connection was the formal consummation of arrangements in perfecting a sale. We think it but fair to Mr. Homer to say that we do not find this borne out by preponderating proof in the case. On the contrary we think the weight of evidence is decidedly to the contrary ; and to the effect that the sale in question was effected through the efforts of Mr. Homer ; and was brought about by the tact, judgment and persistence displayed by him under circumstances of difficulty and discouragement. Another

circumstance to be considered in this connection is that Mr. Homer, at the time of his employment by the trustees of this estate, was connected with a prosperous business as a member of the Baltimore bar; and that the services rendered the trust estate were, during the time he was engaged with them, largely exclusive of all other business. He spent about seven months of the time he was so engaged in London giving practically exclusive attention to these services. He thus risked, and as he testifies, was actually subjected to losses of business at home of considerable pecuniary value.

A further circumstance to be adverted to is that the compensation he was to receive from his employment was to a great extent contingent; not in the sense that he was at the risk of receiving nothing for time and labor expended. His expenses were assured and there was reason for him to expect some compensation for service rendered; but whether this would prove adequate to the time necessary to be exclusively given to the employment; and the risk of loss to business at home to be incurred, was uncertain. As has been seen the the order of Court authorizing his employment retained full control over it to the extent of reserving the right "to modify or alter" the order "from time to time" as might "seem right and proper." A "full report" of services and expenditures was exacted to be made for the "ratification and approval" of the Court; and only such fee was to be paid as might "seem right and reasonable, subject to the ratification and approval" of the Court. The order seems to have been expressly framed to enable the Court to see that the compensation to be allowed thereunder should be proportioned to results accomplished; and evidence *aliunde* the order shows that this was in the mind of the careful Judge who passed the order in the guarded manner that he did. In agreement with such a purpose was his final action in this connection in measuring the compensation allowed by the results shown.

In the light of these general considerations we may now look into the evidence submitted to give specific value to the services in question. As to this we have first the certificate

already alluded to of the two eminent members of the bar who signed it.    One of these, as the record states, did not appear to testify upon the trial of the exceptions on account of illness ; but the other did so appear and testify, and reiterated with emphasis the opinion which he had joined in giving in the certificate.    In addition to this three other members of the bar of Baltimore from among those having the largest and most varied experience—one of them with a long career at the bar—testified to the effect that the fee fixed by the Court in its order of the thirtieth of November, 1901 of $25,000 was but a reasonable and fair allowance for the services rendered by Mr. Homer.    Two of the trustees, Mr. Kemp and Mr. Dulaney, testified to the same effect.    Mr. Ramsay, the other trustee, named $10,000 as what had occurred to him as a reasonable allowance.    Mr. Barton, another leading practitioner at the Baltimore bar, testifying for the exceptants named the same amount, $10,000.    In the brief filed on behalf of some of the excepting creditors there is an admission by one of them that $15,000 would not be more than fair and reasonable compensation to Mr. Homer.    We have thought it but fair to set out what the record discloses in reference to the value of the services of Mr. Homer and the estimate placed upon them by witnesses of experience and judgment.    The amount fixed by the Court in its final order for an allowance to him was, as has been seen, ten per cent on the amount of the sale of the good will, &c., or the sum of $19,484.79.    We think under all the circumstances of the case and according to him full credit for the faithful and efficient service rendered the estate that this allowance may fairly be further reduced. In our opinion seven per cent on the amount of the sale made by him would be a fair and proper allowance and we, accordingly, will reverse the order of the Court as to this allowance and direct the allowance to be made at that rate.    The fact that Mr. Homer had all the expenses incurred by him in connection with his services paid out of the funds of the estate is a consideration that weighs with the Court in fixing the amount of this compensation.

3rd.  As to the commissions allowed to the trustees.    Ob-

jection is made to the allowance of the two per cent on the amount of the sale of the good will effected through the agency of Mr. Homer because it is insisted that the allowance to him for this service performed by him and not by the trustees ought to be exclusive of all other compensation on this account. This is a proper matter for consideration in fixing a rate of commission for the trustees. Objection is also made to the allowance of six per cent on the sum of $238,-453.41 as being unreasonable and excessive. The allowance of commissions to trustees in cases of this character is within the discretion and judgment of the Court and is to be determined from all the circumstances of the case; from the amount of labor required of them; the amount of risk incurred; the character of duties to be performed; the time and attention necessary to be bestowed upon these duties; and the amount of the estate which is the subject of the trust. The trustees in this case have been allowed commissions according to the rule of Court on the sale of real estate reported by them and these commissions are not here in question. Our opinion is that upon all sums other than the proceeds of sale of the real estate commissions at the rate of two and a-half per cent will be a reasonable and proper allowance to be made to the trustees under the circumstances of this case.

It follows from the conclusions reached that the order of the Court below must be reversed as to the allowance to Francis T. Homer and to the trustees and the cause remanded that an order may be passed in conformity with the foregoing views of this Court. The costs of the exceptions to the auditor's account and of these appeals will be ordered to be paid out of funds in the hands of the trustees awaiting the further order of the Court below under paragraph 11 of its final order upon the exceptions.

> *Order reversed in part and affirmed in part.*
> *Costs to be paid out of funds in the hands*
> *of trustees under paragraph 11 of the final*
> *order of the Court below from which these*
> *appeals were taken and case remanded.*

(Decided January 15th, 1903.)