FLORENCE W. SCHLOSS *v.* JAMES J. RIVES.
[No. 50, January Term, 1932.]

*Decided April 8th, 1932.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Eldridge Hood Young* and *L. Wethered Barroll,* with whom was *James J. Lindsay* on the brief, for the appellants.

*Edward N. Rich* and *Seymour O'Brien,* for the appellee.

DIGGES, J., delivered the opinion of the Court.

This appeal involves the question of the validity of an order of the Circuit Court of Baltimore City allowing commissions to the appellee, a conventional trustee appointed by the will of Julius Schloss, deceased. The order appealed from is: "That James J. Rives and Florence W. Schloss, trustees, in this cause be and they are hereby allowed commissions at the rate of two and one-half per cent. on the amount of corpus of the trust estate being administered in this cause, which has been invested for the first time by the said trustees, said commissions to be equally divided between the two trustees."

The appellant and appellee were appointed by the said will of Julius Schloss as co-executors and trustees; the appellant being the widow of the testator. The inquiry involves a construction of Item 8 of the will, which is the only part of it concerning commissions. Item 8 provides: "I nominate as my executors, who later are to serve as trustees of my estate my widow, Florence W. Schloss, and my friend James J. Rives, and she is to be excused from giving any and all bond in either capacity, provided that in case of the death or retirement of either trustee, the survivor, with the approval of my brother William Schloss, and my brother-in-law, Leon Whitehill, shall name a successor or successors, and this shall be done from time to time as the contingency may arise, and such successor or successors shall be vested with all the rights and have all the duties and responsibilities of the trustees originally named by me. Provided further that said James J. Rives is to receive as his executor's fees, one-half of one per cent., and he or some one standing in his stead as trustee, is not to receive more than one per cent. commission on annual income, and is not to be paid anything as commission or fees for making any change in in-

vestment." The testator died in the year 1925 and left an estate of approximately $500,000. As construed by decree of the Circuit Court of Baltimore City (from which decree no appeal was taken), the will provided that the entire income from the estate should go to the widow. It made no provision for commission or compensation to Mrs. Schloss, either as executrix or trustee.

A large portion of the estate was represented by the interest of the testator in the firm of Schloss Bros. & Co. The co-executors qualified as such, and administered the estate in the Orphans' Court of Baltimore City, converting the estate, or the principal part thereof, into cash. In 1925, having completed the administration in the orphans' court, they petitioned the Circuit Court of Baltimore City to assume jurisdiction, and since then, as trustees appointed under the will, have been performing their duties under the order and direction of that court, paying to Mrs. Schloss the income, and paying to the appellee one per cent. commission on the income. The appellee is a competent business man, and had been employed by Schloss Bros. & Co. in an important and responsible position for many years prior to the death of the testator. It is clear from the record that such relationship between the testator and the appellee was the moving cause for his being appointed co-executor and trustee. The record further shows that the administration of the estate in the orphans' court, and later in the equity court, devolved upon and was performed in large measure by the appellee; that this duty has been faithfully and efficiently performed; that he received as compensation in the orphans' court one-half of one per cent. of the estate, as provided for in Item 8 of the will; that he has so far received as compensation in the equity court one per cent. commission on the annual income from the estate,—this, also, as provided by the will. He is now asking, and has been allowed by the order of the lower court, one and one-quarter per cent. on the amount of corpus of the trust estate which has been invested for the first time by the trustees; which amount, as shown by the Exhibit No. 1 filed with the testimony, is

$394,765.23. The compensation thus allowed to the appellee for making original investments would therefore be $4,-934.57. The appellant contends that he is not entitled to this last stated amount, because the provisions of the will, correctly construed, eliminate the same and confine the appellee, as trustee, to one per cent. of the annual income. We do not understand that the appellant contends that, if the will were silent as to compensation to the trustee, the equity courts of Baltimore City could not legally allow commissions in accordance with the established practice in those courts; but her contention is that the language of the will effectually precludes any such allowance.

There have been many decisions of this court dealing with the allowance of commissions to executors, administrators, and trustees. From these decisions certain propositions are established as the settled law of this state: First, that the early English rule in respect to the nonallowance of commissions to conventional trustees, unless the instrument creating the trust provided for compensation, is not the rule that has prevailed in Maryland; but that beginning with the decision in *Ringgold v. Ringgold,* 1 H. & G. 11, it has been held that, by an equitable construction of, and by analogy to, the statutes allowing commissions to executors, administrators, guardians, and trustees under judicial sales, and the principles upon which those statutes were based, compensation should be allowed to a conventional trustee as a reasonable indemnity for services rendered by him in the discharge of his duties, although no provision for such compensation is made in the instrument creating the trust. *Miller's Eq. Proc.,* sec. 557; *Perry on Trusts,* secs. 916-919; *Ringgold v. Ringgold, supra; Sanderson v. Pearson,* 45 Md. 483; *Bentley v. Shreve,* 2 Md. Ch. 215; *Northern Cent. Ry. Co. v. Keighler,* 29 Md. 572; *Whyte v. Dimmock,* 55 Md. 452; *Abell v. Brady,* 79 Md. 94, 28 A. 817. Second, that, where the compensation of a conventional trustee is fixed in the instrument making the appointment, the same will ordinarily and generally be allowed. *Mitchell v. Holmes,* 1 Md. Ch. 287; *Parker v. Leighton,* 131 Md. 407, at page 422, 102 A. 552.

In *Mitchell v. Holmes,* where, as in this case, the same person was executor and trustee, it was said: "He has already received as executor, eight per cent. upon the personal estate now in his hands as trustee; and the answer of the defendant Holmes, insists, that the trustee is only entitled to ten per cent. commission on the gross income of the personal estate. But the testator has said, that he shall have 'ten per cent. upon the whole amount of property, which may come into his hands as trustee.' Not upon the amount of income, but upon the amount of property, and this declaration of the testator gives the law of the case. The compensation thus fixed by the testator to be paid to the trustee, is to be paid to him as such; regarding him, when acting in that capacity, as filling an office wholly distinct from the office of executor. The percentage is to be paid him on the property, which may come into his hands as trustee; an office, so far as this question is concerned, entirely distinct from that of executor, and the compensation which he may have been allowed by the orphans' court for discharging the duties of executor, should have no more influence upon his commission as trustee under this will, than if the two offices were filled by different persons." Third, that the statute (Code 1924, art. 93, sec. 5) fixes the commission to executors and administrators within the discretion of the orphans' court; this discretion being limited in its exercise between the amounts fixed as minimum and maximum commission by the statute; that a testator cannot deprive an executor of the commissions allowed by the statute; neither can the court, for, in doing so, it would effectually repeal the provisions of the statute (*McKim v. Duncan,* 4 Gill, 72; *State v. Baker,* 8 Md. 44; *Handy v. Collins,* 60 Md. 229); that one undertaking the office of executor does not elect, and is not bound, to give effect to all the provisions to be found in the will; such clauses as are inconsistent with the law, which the executor is bound to obey, are of no validity, and constitute no part of the will, *supra;* that the allowance of commissions to trustees, when the trust is administered under the control and supervision of the court, is largely within the discretion and judgment of the court, and is to be

determined from all the circumstances of the particular case, taking into consideration the amount of labor required, the amount of risk incurred, the character of the duty to be performed, the time and attention necessary to be bestowed upon it, and the amount of the estate which is the subject of the trust; in other words, the compensation is upon the basis of a *quantum meruit*, and is to be such an amount as will fairly and justly compensate the trustee for the services rendered. *Nat. Bank v. Dulaney,* 96 Md. 159, at page 176, 53 A. 944; *Kennedy v. Dickey,* 99 Md. 295, 57 A. 621. Where rules of court or established practice fix the rate of commission, they should be followed and enforced; but, even in such cases, keeping in mind that the character, quality, and extent of the service is what is being allowed for, the chancellor in extraordinary cases has the authority to diminish or increase the usual allowance. This flexibility can have none other than a salutary effect, because every trustee would be bound to recognize that his compensation may be affected by the fidelity, diligence, and efficiency with which he executes the trust. The beneficence of this control by the chancellor is illustrated in the case of *Diffenderffer v. Winder,* 3 G. & J., at page 347, where it was said: "On the appeal taken in this case by Winder and wife, we cannot sustain the decree of the chancellor. It gives to the trustee a commission * * * which is the full allowance that ought to have been made to him, had his conduct been marked by a strict performance of the duties he had assumed. But this is very far from being the posture in which he appears before us. It is the duty of a court of equity, in the distribution of its favors, to discriminate between those who violate their duty and abuse their trust, and those who perform it with skill and fidelity. To the latter a full commission is cheerfully bestowed; to the former half that amount is reluctantly granted."

When the above summary, deduced from the previous decisions of this court, is applied to the facts of this case, it becomes apparent that, if the will of Julius Schloss definitely and unequivocally fixes the commission which the applee is entitled to as trustee, we must give effect to such pro-

vision; but, if it does not, he is unquestionably entitled to such commission for making original investments as is established by the long settled practice in Baltimore City, which is to allow commissions in accordance with those allowed by the chancellor in this case. That practice was established by two decisions of the equity courts of Baltimore City: First, by Judge Dennis in *The Matter of the Trust Estate of P. Hanson Hiss,* Daily Record, March 18th, 1891, wherein it was said: "It has been the uniform practice of this Court, when a trustee is directed to make an investment or trust funds pending a litigation, or when he applies for authority to make such investment, to allow him two-and-a-half per cent. on such investment"; and, second, in the case of *Abell v. Abell,* Daily Record, March 18th, 1901, in an opinion by Judge Ritchie to the same effect, *Miller's Equity,* p. 662, note; and has been followed and applied since those decisions, and finds recognition by this court in *Kennedy v. Dickey, supra.*

The question here presented is therefore narrowed to a decision as to whether or not the language of Mr. Schloss' will denies compensation to the trustee for making original investments, that is to say, investments made for the first time by the trustee. While the language employed by the testator is susceptible of more than one construction, we are inclined to give it that interpretation which would provide reasonable and fair compensation for the services rendered by the appellee, which as stated, entailed much time and trouble, involving a large estate, and which have been performed in a highly efficient manner. Neither does this conclusion do violence to the language of the will. In respect to compensation to the appellee, that language dealt with three distinct services for which compensation might have been awarded: First, as to what he was to receive as executor, which is definitely stated as one-half of one per cent.; and, while it is true the appellee might have demanded and received more in the capacity of executor, he nevertheless accepted the amount named in the will, and settled the estate

in the orphans' court upon that basis; and he does not make any claim for further compensation for service as executor. Second, compensation for services in collecting and distributing the income from the estate, which, under the practice in Baltimore City, seems to be five per cent., but which, by the will, is definitely limited to one per cent. of the annual income. This was the amount which the chancellor found he was entitled to receive for services in collecting and disbursing the income; and from this decision against the appellee he has not appealed. Therefore his compensation for this service is in accordance with the express language of the will, and is irrevocably fixed by the decree of the chancellor. Third, the language of the will is that he "is not to be paid anything as commission or fees for making any change in investment." This language is declaratory of the practice in Baltimore City not to allow a trustee commissions for any change of an investment theretofore made by the trustee. The reason for the establishment of this practice is apparent, and it is to prevent a trustee from changing investments for the purposes of making fees or commissions, and to conserve the estate from being depleted by the charge of commissions for services in changing original investments.

In this case the record shows that the trustees received the corpus of the estate principally in cash, the interest which the testator had in Schloss Bros. & Co. having been converted into cash during the course of the administration in the orphans' court; and therefore it was the province and duty of the trustees to invest this cash corpus in safe and productive securities. For doing this the appellee has been allowed, as one of the trustees, one-half of two and one-half per cent., which in our opinion is compensation earned by the service rendered, and can in no just sense be said to be exorbitant or an unreasonable charge upon the estate.

There is some argument in the appellant's brief to the effect that, at the time the trustees took over the corpus, it was deposited in bank as an interest-bearing account; that, being so deposited, it was an investment by the trustees, and that, when it was used in purchasing other securities, it was

not an original investment, but a re-investment. We can give no weight to this argument. The money was deposited in bank by the executors, and the turning over of same by them to themselves, as trustees, was a mere bookkeeping operation. We do not think the fact that this was an interest-bearing account, rather than one not bearing interest, makes the purchase of other securities with the money a re-investment rather than an original investment. It would be well-nigh impossible for trustees, under such circumstances, to invest an estate of this magnitude immediately upon its being turned over to them; and pending the making of future investment, reserving the time to investigate securities which might be offered, it was not only proper, but perhaps the duty of the trustees, to deposit the funds in a safe bank which would pay interest thereon, until invested in other securities.

Being of the opinion, under the circumstances of this case, that there was no error in the order appealed from, the same will be affirmed.

*Order affirmed, with costs.*