600

MAX SOKOL AND LOUIS ELIASBERG, Trustees
*v.* RALPH A. NATTANS et al.

[No. 744 (on motion to dismiss), September Term, 1974.]

*Decided December 13, 1974.*

The cause was argued before Orth, C. J., and Morton, Thompson, Moylan, Powers, Gilbert, Menchine, Davidson, Moore and Lowe, JJ.

*Francis D. Murnaghan, Jr.,* and *Benjamin Rosenberg,* on motion to dismiss, for appellees.

*Delverne A. Dressel* and *Paul E. Burke, Jr.,* in opposition to motion, for appellants.

ORTH, C. J., delivered the opinion of the Court.

I

By motion timely filed, Ralph A. Nattans, Emanuel Hecht, Arthur Nattans, Roger Nattans, Albert Lowenthal, Jean Arthur Lowenthal, Elinor S. Multer, Aline H. Johnson, Barbara H. Cleveland, Paul W. Schatzkin, Arthur G. Schatzkin, Dorothy R. Schatzkin and Audrey N. Katz, appellees and cross-appellants, hereinafter referred to as appellees, moved to dismiss the appeal of Max Sokol and Louis Eliasberg, two of the Trustees under the Will of Arthur Nattans, deceased, appellants and cross-appellees, hereinafter referred to as appellants. Maryland Rule 1036 c. The ground for the motion was that the appeal was not allowed by law. Rule 1035 b (1). Appellants filed an answer giving reasons why the motion should be denied and the appellees filed a motion *ne recipiatur* to the answer which appellants answered. At the request of this Court, a memorandum of law was filed by appellees and by appellants. The motions were heard by the Court *en banc.* We deny the motion to dismiss the appeal and the motion *ne recipiatur* to the answer thereto. In determining the motion to dismiss the appeal, however, we have not considered any allegations of fact set out in the answer to the motion to dismiss which do not appear in the record submitted to us.

II

Arthur Nattans I died on 17 April 1905 leaving a Will and two Codicils thereto. The Will created a trust of 396 shares of the 400 shares outstanding of Read's Inc. The trust was to cease upon the death of the last survivor of the testator's eight children, which event occurred upon the death of Arthur Nattans II on 24 September 1972.[1] The Will appointed three trustees and assured that there would be

---

1. A decree of the Circuit Court for Baltimore City construing the Will was affirmed by the Court of Appeals in *Weller v. Sokol,* 271 Md. 420.

three trustees during the life of the trust by providing for the appointment of a successor trustee to take the place of any one of the trustees named or their successors who died or resigned their trust. At the time the trust ceased, the trustees were **Max Sokol, Louis Eliasberg and Arthur K. Solomon.** On 3 June 1974 they filed in the proceedings in the Circuit Court for Baltimore City [2] a petition praying the passage of an order allowing them compensation and commissions and a final distribution allowance for their services. In the petition Solomon pointed out that in addition to being a trustee of the trust estate, he was also a beneficiary thereof. He declared he did "not desire to suggest any measure of compensation, but agrees to accept such compensation for his services as this Court shall determine to be reasonable and proper." Sokol and Eliasberg suggested what their compensation should be. In connection with the final distribution of the trust estate, they indicated they would be willing to accept an allowance equal to one-half of one per cent of the value of the corpus of the trust estate being distributed. With regard to income, they set out three alternatives for fixing compensation. On 12 June the chancellor wrote counsel for the parties giving his view as to the compensation to be paid. He directed counsel for the trustees to prepare an order in accordance therewith, to send a copy to counsel for all parties and to those parties not represented, and to submit the order to the court for execution after reasonable notice had been given. The order was signed 5 July 1974. It allowed the trustees a commission payable out of income in an amount equal to 5% of the income of the trust from September 24, 1972 through June 15, 1974 as compensation for their labor and responsibility during that period. It denied the request for additional commissions. It authorized the trustees to pay out of income certain amounts "to their counsel for services rendered as set forth in the petitions for payment of counsel fees." [3]

---

2. The trust was administered under the supervision of the Circuit Court for Baltimore City, docket 53A (1913), folio 169 *et seq. See Ryan v. Herbert,* 186 Md. 453.

3. On 3 July 1973 Forrest F. Bramble, Jr., Esq. and Delverne A. Dressel, Esq. filed a petition for the passage of an order authorizing the trustees

On 2 August 1974 the attorneys for Sokol and Eliasberg filed an "ORDER FOR APPEAL BY MAX SOKOL AND LOUIS ELIASBERG, TWO OF THE TRUSTEES UNDER THE LAST WILL AND TESTAMENT OF ARTHUR NATTANS, DECEASED, PLAINTIFFS." The order directed the Clerk to "Enter an Appeal to the Court of Special Appeals of Maryland from that portion of the Order entered in this action on July 5, 1974 that denied the request of the Trustees for a commission on corpus upon final distribution of the trust provided by Article 16, Section 199 (e)." On 15 August, Solomon, as a co-trustee, filed a "Notice of Disclaimer of Right to Appeal" in which he disclaimed and denied the right of Eliasberg and Sokol to appeal the order of 5 July 1974. In support thereof, he attached a copy of a letter dated 10 July 1974 which he stated was mailed to Eliasberg and Sokol "on or about July 15, 1974." According to the copy attached, the letter related that Solomon had been advised that the order denied commissions on the corpus of the trust, but authorized the payment of commissions of 5% on the income of the trust since 24 September 1972. It asserted that the amount of the commissions under that formula would exceed $50,000. It continued:

> "I have also been advised that one or both of you may appeal Judge Ross' decision. Although your success on appeal would financially help me, because I am entitled to 1/3 of any trustees' commissions but I would be charged with the expense of only 1/7 of the commission, I think it

to pay them a reasonable counsel fee. The petition set out that they were employed by the trustees to assist and advise the trustees with respect to the proper distribution of the trust estate. On the same date Sokol and Eliasberg, as two of the trustees, filed a petition for the passage of an order allowing counsel fees out of the proceeds of the trust estate to be paid to Dressel and Paul E. Burke, Jr., Esq. The petition stated that Bramble, one of the counsel for the three trustees, was unable fully to represent the interest of all of them in connection with the allowance of proper compensation for their services as trustees because of the aforementioned position of Arthur K. Solomon not to participate actively in any hearing in connection with commissions, not to appear at the hearing to testify on behalf of the Trustees and not to waive commissions. Therefore, Eliasberg engaged the services of Burke, and Sokol engaged the services of Dressel to represent them with respect to the allowance of commissions.

would be very unwise to appeal. First, I think that Judge Ross' decision was a very fair one. Second, our chances of success on appeal are very limited because of the manner in which Judge Ross' opinion was written. He made a finding of fact as to the fair and reasonable compensation, and as your lawyers have undoubtedly told you, it is very difficult to reverse a trial judge's finding of fact.

As one of the three co-trustees, I therefore oppose the institution of any appeal, and I instruct the two of you not to file an appeal from Judge Ross' Order of July 5." [4]

### III

The question presented for decision is simply whether, in the circumstances, the appeal as taken is allowed by law.[5]

Appellees argue that two of three trustees may not prosecute an appeal in their fiduciary capacity without the joinder and consent of the third trustee. They point to the rule of unanimity as set forth in *Restatement, Trusts* 2d, § 194 (1959):

"If there are two or more trustees, the powers conferred upon them can properly be exercised only by all the trustees, unless it is otherwise provided by the terms of the trust." [6]

---

**4.** On 16 August 1974 appellees and Ruth L. Creamer filed an order for cross-appeal to this Court from that portion of the order of·5 July 1974 authorizing the trustees to pay out of the income of the trust estate $8,686.32 to counsel for Sokol and Eliasberg for services "related to that portion of the Petition for Compensation which sought allowance of a termination commission from the corpus of the trust." See Rule 1012 b, effective 1 July 1974. The cross-appeal is not involved in the matter now being considered by us.

**5.** Appellants in their memorandum present the question thus: "Can the rights of independent Co-Trustees to appeal from a denial of their claim for a termination commission on corpus be defeated by the refusal of a Co-Trustee, who is also a beneficiary of the trust, to join in the appeal?"

**6.** Sokol, Eliasberg and Solomon are successor trustees. The Will named three trustees to hold and manage the trust estate consisting of the Read's Inc. stock during the existence of the trust. They were the testator's son-in-law, Samuel L. Bachrach, his friend, W. Burns Trundle, and his wife, Jennie Nattans. Their duties as to payment of taxes, expenses and income, and with respect to certain other matters, were set out but powers which they could exercise were not specifically designated. The Will, however,

Comment a to § 194 states in part:

> "If there are two or more trustees, action by all of them is necessary to the exercise of the powers conferred upon them as trustees. If one of them refuses to concur in the exercise of a power, the others cannot exercise the power."

Appellees refer to 3 Scott, *The Law of Trusts*, § 194 (3rd ed. 1967) and Bogert, *Trusts and Trustees*, § 554 (2d ed. 1960) for similar statements of the rule. They claim that the courts of Maryland have adhered to the rule of unanimity at least since *Latrobe v. Tiernan*, 2 Md. Ch. 474, decided in 1851 and cite *Wlodarek v. Wlodarek*, 167 Md. 556, 558. They assert that the rule was applied to dismiss an appeal in *Donovan v. Miller*, 137 Md. 555 and *Kramme v. Mewshaw*, 147 Md. 535. They distinguish *Mathias v. Segaloff*, 187 Md. 690 as concerning receivers, which they believe the Court viewed as a different class from trustees.

Appellants declare that this is a case of first impression. Their research "disclosed no reported case wherein a co-trustee was barred from pursuing his right of appeal from denial of compensation because of the failure or refusal of a co-trustee to join in such appeal." They attribute the dearth of litigation on the question "to the fact that the recognized rule requiring trustees to act unanimously applies only to matters involving the fiduciary management of the trust estate and does not apply to cases, such as the present case, involving the exercise of no such fiduciary power and in which the trustees have a personal interest." This is the keystone of their argument. They claim that the rule of unanimity is limited to trustees exercising fiduciary powers and discretion in the management of the trust. They agree that Maryland has followed the rule of unanimity since *Latrobe v. Tiernan*, *supra*, but maintain that the rule has never been applied in a reported case in this State or in

---

conferred on successor trustees "all the powers and duties together with the compensation as above provided in reference to the three trustees appointed by this will." Item Seventh of the Will provided that the trustees "shall receive for their services as such the usual commission of five per cent upon the annual income of said trust estate."

any other jurisdiction "in such a fashion as to preclude a co-trustee from litigating his claim for compensation because of the failure or refusal of a co-trustee to join in such action." They refer to *Schloss v. Rives,* 162 Md. 346, as permitting a trustee to petition for compensation and litigate his claim therefor in the face of opposition from a co-trustee of the trust who was also the principal beneficiary thereof. The unanimity rule was not mentioned, and appellants argue that an exception to that rule was recognized by the decision *sub silentio.* They distinguish *Donovan v. Miller, supra,* on its facts which they ascertained by going to the original record and briefs. They also refer to the language of § 194 of the *Restatement of Trusts, Second,* and Comment a thereto, but they emphasize that it is the powers conferred upon trustees which can be exercised only by all of them, or in other words, that it is with respect *to the exercise of powers conferred upon them as trustees* that action by all is necessary. They conclude that "Obviously the Restatement limits the requirement of unanimity to the exercise of fiduciary powers." They cite foreign authority as indicating that "[i]n the rare cases where a co-trustee attempts to prosecute any legal action or appeal over the objection of a co-trustee, the Courts have generally allowed the appeal." [7] They quote from a general discussion in Annot., 6 A.L.R.2d 147, 148:

> "The interest which a trustee has in the subject matter of the trust estate is of a dual nature. He has a personal interest to the extent that he is entitled to a compensation for his services in the administration of the trust, and to this extent he is an interested person aggrieved by any adverse judgment or order, within the contemplation of the rule as to appeals. He is also an aggrieved party if the decree or order imposes upon him a personal

---

7. *Stanton v. Preis,* 291 P. 2d 118 (Cal. App. 1955); *In re Estate of Cooper v. Security Pacific National Bank,* 11 Cal.App.3d 1114, 90 Cal. Rptr. 283 (1970); *Tree v. Continental Illinois National Bank and Trust Company of Chicago,* 346 Ill. App. 509, 105 N.E.2d 324 (1952); *Commercial National Bank v. Hayter,* 473 S.W.2d 561 (Tex. 1971); *In re Luscombe's Will,* 85 N. W. 341 (Wis. 1901).

liability arising from the administration of the trust estate or from the duty to account therefor (citations omitted) . . . *His right to take an appeal is universally recognized where his personal rights are affected by the order or judgment . . .*" (Emphasis supplied)

They opine: "An appeal from the denial of a commission on corpus upon the termination of a trust does not constitute the exercise of 'powers conferred upon them as trustees' within the scope of Sec. 194 [of *Restatement of Trusts, Second*], nor upon the facts and holdings of the Maryland cases that have enunciated [the rule of unanimity]."

Appellees counter by asseverating that "[a]ppellants are estopped and precluded from asserting any personal interest in the award of compensation." They support this argument by pointing out that "[w]hen the question arose as to where the burden should fall of lawyers' fees in connection with the efforts made to obtain a termination commission, Appellants saw only the representative character of their claim, and persuaded the lower court, over objection, to allow such fees as proper charges against the trust assets. The Appellants successfully opposed the contention that they had sought the commissions in their individual capacities, and so should pay their lawyers from their own pockets." [8] Sokol and Eliasberg, appellees state, prosecuted the appeal in their fiduciary capacity as two of the successor trustees. "They are, therefore, estopped and precluded from asserting any personal interest in the award of compensation to them since such an assertion is directly contrary to the position which Appellants have taken throughout the course of these proceedings." They cite *Van Royen v. Lacey,* 266 Md. 649; *Stone v. Stone,* 230 Md. 248, 253; *Fisher v. Boyce,* 81 Md. 46; *Edes v. Garey,* 46 Md. 24, 41.

Thus the issue is cleanly drawn. Appellees contend that all the trustees sought, as they must, compensation in their fiduciary capacity and, under the rule of unanimity, not less

8. As we have indicated, the propriety of this is the subject of the cross-appeal and is not now before us.

than all may challenge the action of the chancellor thereon. Appellants claim that the rule of unanimity is not applicable in such circumstances, so that an appeal will lie by those trustees who feel aggrieved, although less than all.

## IV

### (a)

Whether the order here is considered a final order or an appealable interlocutory order, there is no statute dispositive of the question before us.[9] Courts Art. § 12-301 gives, with exceptions not here applicable, a party the right to appeal from a final judgment entered by a court "in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law." [10] Courts Art. § 12-303 permits a party to appeal from certain orders entered by a circuit court in a civil case. Subsection (c) (5) designates an order "For . . . the payment of money, or the refusal to rescind or discharge such an order, unless the . . . payment is directed to be made to a receiver appointed by the court." Subsection (c) (6) specifies an order "Determining a question of right between the parties and directing an account to be stated on the principle of such determination." We do not believe that the term "a party" as used in Courts Art. §§ 12-301 and 12-303 is

---

9. It may be that before 1 January 1974, effective date of Acts 1973, 1st Sp. Sess., ch. 2, § 2, which repealed Code, Art. 5, an appeal such as the one here brought was authorized, with restriction, by Art. 5, § 8: "Any receiver, trustee, or other fiduciary appointed by or acting under the jurisdiction of a court of equity may appeal to the Court of Appeals from any final decree by which any preference or priority between creditors or other persons interested in the estate is determined, but no such appeal shall be entered without the consent and approval of the court having jurisdiction over the estate." No comparable provisions appear in the Courts Article. The Revisor's Note to Courts Art. § 12-301 explains: "The portion of § 8, permitting an appeal under its provisions only when the court consents, has been eliminated. It seems anomolous to permit an appeal only with the permission of the very court whose decision is being appealed." *See Mackenzie v. Gerke*, 118 Md. 326, 334-335.

10. Courts Art. § 12-101 (f) defining "Final judgment" as "a judgment, decree, sentence, order, determination, decision or other action by a court, including an orphans' court, from which an appeal, application for leave to appeal, or petition for certiorari may be taken", does not attempt to specify what is an appealable final order, leaving that to case law.

authority for an appeal by less than all trustees if the rule of unanimity is applicable. That is, "a party", as it relates to trustees, contemplates, not individual trustees each as a party, but one collective trustee acting as a unit unless permitted by law to act separately.

### (b)

We are not concerned with the right *vel non* of a sole trustee or multiple trustees acting as a unit to appeal from a final judgment or an appealable interlocutory judgment affecting the trust estate and rights of beneficiaries.[11] Circumstances under which trustees may or may not so appeal are discussed in Annot., 6 A.L.R.2d 147, under "Right of trustee of express trust to appeal from order or decree not affecting his own personal interest." But we are in accord with the general discussion of the Annotation, quoted *supra*, that the interest which a trustee has in the subject matter of a trust estate is of a dual nature. "He has a personal interest to the extent that he is entitled to a compensation for his services in the administration of the trust, and to this extent he is an interested person aggrieved by any adverse judgment or order, within the contemplation of the rule as to appeal. . . . His right to take an appeal is universally recognized where his personal rights are affected by the order or judgment."

We think that a trustee has the right to seek compensation to which he may be entitled by law or under the trust agreement. To that end, even though it is a matter of personal interest, appropriate action is properly brought in his fiduciary capacity because it is in that capacity that compensation is due him.[12] That the action, however, may be brought by the aggrieved trustee in his fiduciary capacity, that is as a trustee, does not mean when there is more than one trustee that the rule of unanimity applies to preclude the action by less than all the trustees. The rationale of the

---

11. See, for example, *MacNabb v. Sheridan*, 181 Md. 245.
12. Whether counsel fees incurred in pursuing such action are properly chargeable to the trust is not now before us, and we expressly do not decide that question in this opinion. See note 4, *supra*.

rule of unanimity is that the multiple trustees are but one collective trustee and must act as a unit because they have a common purpose — the proper administration of the trust estate. This interest in the subject matter of the trust in a fiduciary capacity is readily distinguishable from the personal interest in receiving just compensation for performance of the fiduciary duties. Interest in the latter is not necessarily common to each trustee, but, rather, may be peculiar to the individual trustee, as for example, in the case at hand, where one of the trustees is also a beneficiary of the trust. It would be contrary to the tenets of equity to allow one trustee to thwart the efforts of his co-trustees to obtain allowable compensation by the mere act of refusing to join in an action to seek it. By the same token, it would be inappropriate to permit one trustee to prevent appellate review of an allowance for or denial of compensation by the mere refusal to join in the appeal sought by an aggrieved co-trustee. We conclude that appellants are not estopped from asserting a personal interest in an allowance for compensation. We hold that the rule of unanimity does not preclude the appeal here noted.

In so holding, we intend no departure from the rule of unanimity. We expressly affirm it, but we simply do not believe that it applies in the circumstances. We find no authority compelling a contrary decision. As appellants suggest, we see at least tacit authority for our view in *Schloss v. Rives, supra.*[13] And on the facts of *Donovan v. Miller, supra,* its holding is not dispositive. Nor is *Kramme v. Mewshaw, supra,* which cites *Donovan* as authority for the view that one of two conventional trustees could not prosecute an appeal, on the ground that trustees have equal power, interest, and authority, and so cannot act separately. In *Kramme,* as the Court carefully pointed out, the appeal, unlike the appeal here, had to be considered as taken by a co-trustee only as in her representative capacity. 147 Md. at 552-553.

It is true that grants to trustees are usually construed as

---

**13.** *Killen v. Houser,* 239 Md. 79, and 251 Md. 70, are not factually apposite. We think it clear that one trustee may bring an action against a co-trustee for violating his trust.

creating a joint tenancy between them, if a contrary intent is not otherwise expressed. Bogert, *Trusts and Trustees*, § 145 (2nd ed. 1965); 2 Scott, *The Law of Trusts*, § 103 (3rd ed. 1967). It may be argued, therefore, that because joint tenants of real property must join in actions,[14] there is an analogy between them and co-trustees. There is some analogy but it is not determinative of the case before us. Bogert, in speaking of grants to trustees being construed as creating a joint tenancy, notes that it is exceedingly advantageous for them to hold as joint tenants because of the nature of their powers and duties and on account of the advantage of survivorship. He observes that they are usually required to act unanimously, and, for purposes of administration they are regarded as a unit. "This fits in very well with the theory of joint tenancy that, for certain purposes at least, there is a group or unitary holding." § 145. But Bogert points out: "The joint tenancy of trustees is not like the ordinary joint tenancy of persons who hold property for their own benefit. Such latter owners may partition, and each may sell his interest and change the relationship into a tenancy in common. In the ordinary case, however, trustees have no power to partition the trust res and sever the trust by a conveyance or other action. Their powers are confined to joining with their co-trustees in conveying away the whole estate or a part of it." *Id.* 2 Scott, § 103, speaks of co-trustees holding as joint tenants only with respect to the usual incidents of survivorship, explaining why, on the death of one of several trustees, the title to the trust property is in the survivor or survivors and is still held in trust. We do not believe that our holding in *Crowe*, approved by the Court of Appeals, to the effect that joint tenants must join in actions for injuries to real property, requires, either directly or by analogy, that the appeal here be dismissed.

> *Motion to dismiss appeal denied; motion ne recipiatur to answer to motion to dismiss appeal denied; costs to be paid by appellees.*

---

**14.** *Crowe v. Houseworth*, 19 Md. App. 688, 691-693 *reversed on other grounds*, 272 Md. 481, 483.